## WILLIAM T. WAY *vs.* LAWRIN GREER.

Suffolk.			March 8, 1907. — September 4, 1907.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Contract,* Consideration, Validity. *Evidence,* Extrinsic affecting writings. *Practice, Civil,* Exceptions. *Words,* "Released."

Where an instrument in writing in the form of a bond to pay money upon the performance of a condition is not under seal and is stated to be " in consideration of one dollar and other valuable consideration hereinafter named " and no other consideration is named thereafter in the instrument, it may be shown by oral evidence that there was no consideration or that the consideration was an illegal one, or that the money was to become payable only upon the performance of a promise which has not been performed.

An agreement to procure " straw " bail for a person under arrest and when this is obtained to have him leave the State is a fraud on the court in which such bail is to be furnished, and a promise to pay money for which this is part of the consideration cannot be enforced.

An action of contract was brought on the following instrument in writing, not under seal : " In consideration of one dollar and other valuable consideration hereinafter named, I, G. [the defendant], agree to pay to W. $250 in cash, upon the following conditions : Whereas D. is now under bond in the criminal court for the sum of $800, and the said G. is surety on said bond, or has a deposit of $800 as surety ; now when said G. is released or said bond released upon said deposit, then said sum of $250 shall become due and payable, and I agree to pay said sum on demand to said W. Witness my hand and seal this twentieth day of January, 1904." The defendant, who was a friend of D. and had made the deposit of $800 from his own money, testified that he was asked by the plaintiff to sign the instrument, that he asked a brother of D. whether it was all right,

and, receiving an affirmative answer, signed it, that nothing was said to him before signing the agreement and he remembered nothing which was said after signing. Against the objection of the plaintiff, the defendant was allowed to testify that " he was to pay the plaintiff $250 when he got his money." *Held,* that this evidence might have been admitted, either to show that the making by the plaintiff of such an arrangement respecting bail as would enable the defendant to get his $800 was a condition precedent of any obligation on the part of the defendant to pay the $250 and that the instrument was not to become operative until this condition was performed, or, in view of the defendant's testimony that no conversation took place between the plaintiff and himself at the time of signing the agreement, to show the substance of a subsequent conference between the plaintiff and the defendant resulting in a modification of the instrument in writing, and that on either ground of admission the evidence was not in contradiction of the writing.

One G. signed an agreement in writing " to pay to W. $250 in cash upon the following conditions : Whereas D. is now under bond in the criminal court for the sum of $800 and the said G. is surety on said bond, or has a deposit of $800 as surety ; now when said G. is released or said bond released upon said deposit, then said sum of $250 shall become due and payable." In an action on this agreement there was conflicting evidence as to the circumstances and conditions under which the agreement was signed by the defendant. It appeared that D. surrendered himself, and the deposit of $800 was about to be returned to the defendant, but that the bail of D., after having been raised in amount, again was fixed by the judge at $800 and that that sum of money originally deposited by the defendant remained in the hands of the clerk of the court and was treated as deposited anew. The plaintiff asked the presiding judge to rule that as matter of law the $800 was released by the surrender of D. as shown by the evidence. The judge refused to give this ruling and instructed the jury that it was a question of fact for them to decide whether the $800 in the hands of the clerk of the court was released by the surrender of D. in the manner disclosed by the evidence. *Held,* that the refusal of the plaintiff's request involving the meaning of the word " released " was right, and that the instruction given by the judge leaving the question for determination by the jury was sufficiently favorable to the plaintiff.

One G. signed an agreement in writing " to pay to W. $250 in cash upon the following conditions : Whereas D. is now under bond in the criminal court for the sum of $800 and the said G. is surety on said bond, or has a deposit of $800 as surety ; now when said G. is released or said bond released upon said deposit, then said sum of $250 shall become due and payable." In an action on this agreement it appeared that G., the defendant, was a friend of D. and had made the deposit of $800 from his own money, that the plaintiff procured two men who agreed to become sureties for D., that D. surrendered himself to the court, and the clerk of the court took from D. a receipt for the $800 and was ready to pay over that sum of money to the person entitled to it, whereupon the judge increased the amount of the bail to $2,000 and the two men proposed as sureties declined to be sureties for that sum and retired, that D., being taken in custody, signified his desire to re-deposit the $800, that thereupon the judge reduced the bail to the former sum of $800 and D. re-deposited it, a record being made of that fact and the money having remained all the time in the hands of the clerk, and that D. was allowed to go on his own recognizance. The defendant introduced evidence tending to show that the consideration for the agreement in writing was that the plaintiff should procure effectual bail, and that the defend-

ant thereby should be enabled to get his $800. The plaintiff contended that all he agreed to do was to procure bail for $800, that his contract was performed when he procured two sureties sufficient for that amount, and that under the agreement the $250 was due to him from the defendant irrespective of the fact that the amount of the bail had been raised by order of the court. The judge instructed the jury that it was for them to determine what kind of bail it was which the plaintiff agreed to furnish, that they had a right to consider all the circumstances attending the transaction to ascertain the real consideration of the defendant's agreement, and, if they found that the plaintiff had not performed what he agreed to do, they should find for the defendant. The jury found for the defendant. On exceptions by the plaintiff, it was *held*, that the instructions of the trial judge were right.

CONTRACT upon an agreement in writing which is printed below. Writ in the Municipal Court of the City of Boston dated January 30, 1904.

The contract declared on was as follows :

" In consideration of one dollar and other valuable consideration hereinafter named, I, Lawrin Greer, of Boston, agree to pay to William T. Way two hundred and fifty dollars cash, upon the following conditions :

" Whereas, Alfred M. Day is now under bond in the Criminal Court for the sum of eight hundred dollars, and the said Greer is surety on said bond or has a deposit of eight hundred dollars as surety ; now when said Greer is released or said bond released upon said deposit, then said sum of two hundred and fifty dollars shall become due and payable, and I agree to pay said sum on demand to said William T. Way.

" Witness my hand and seal this 20th day of January, 1904.

"Lawrin Greer."

On appeal to the Superior Court the case was tried before *Richardson*, J. It appeared that before the date of the agreement Alfred M. Day had been indicted and held to bail in the sum of $800 in the Superior Court for Suffolk county for the crime of embezzlement, and that he had deposited in lieu of sureties the sum of $800 in cash, which was in the hands and custody of the clerk of the court. It further appeared that this $800 was furnished by the defendant, who was a friend of Day, and was the defendant's money. The plaintiff testified that Day was indebted to him on account of previous transactions, and in December, 1903, or early in January, 1904, employed the plain-

tiff to do two things: first, to endeavor to effect a settlement with the complainant on the embezzlement charge, with the view to trying to get Day's case placed on file by the court after such settlement should be made; and, second, to obtain sureties who should become bail for Day in the sum of $800, in order to release the $800 which the defendant had furnished. The plaintiff further testified that he spent much time and did a large amount of work on the above matters, and procured, through his clerk, two men who agreed to act as sureties for Day in the sum of $800. The plaintiff also testified that when this work had been done by him, Day brought the defendant and Day's brother Charles to the plaintiff's office; that the plaintiff told the defendant what he had done and was doing in the Day matter; that he wanted the defendant to see that he was paid and he then and there drew up the agreement upon which this action was brought; that the defendant read it over, showed it to Charles Day and asked him if it was all right; that Charles Day replied that it was, and that thereupon the defendant signed the agreement and delivered it to the plaintiff.

The plaintiff further testified on cross-examination that at a previous trial of this case he said that when he made the agreement in writing sued on the defendant was to pay him $150 for furnishing an eight hundred dollar surety bond, and $100 for the services he had done in the Day case toward getting the complainant to accept restitution and cash paid out to enable Day to go to see his brother at Gloucester; that he was not to get a bond of $800 and release the money, but that he was to furnish an $800 bond and get the money released for $150 of it — that was to include payment of the bondsmen, and he was to have $100 for his services; that he, the plaintiff, had a claim and a right of action without furnishing the $800 bond, that if he furnished sureties in the sum of $800 he was to have $150 for that, and if they were not furnished he was to have $100 for what he had done.

The cross-examination proceeded as follows: " Q. Upon what condition were you to have the $100? A. Upon the condition that Mr. Greer agreed to pay it. — Q. What did you say, in the trial before, was the condition that you were to have the $250? A. As I recall it I stated just the same as I did in this trial,

that I was to have $150 for furnishing an $800 surety and $100 for services. — Q. Were you to have that $100 for services before you furnished the $800 sureties? A. It was to be paid when that money was released, or the bond released. — Q. By giving a new bond, is not that the fair agreement? A. No."

One Jenkins, a witness for the plaintiff, testified that in December, 1903, and the first part of 1904 he was employed as a clerk by the plaintiff, that he knew Alfred M. Day, Charles H. Day and the defendant, that at the request and by the direction of the plaintiff he did much work in an endeavor to make the best possible settlement with the complainant in the Day embezzlement case, with the view of reporting such settlement to the court, and of asking the court to place the case on file, that he also by the direction of the plaintiff procured two men who agreed to become sureties for Alfred M. Day in the sum of $800; that on January 21, 1904, he went with the proposed sureties to the office of the clerk of the Superior Court for criminal business, that the proposed sureties there were examined by the clerk, that after such examination the proposed sureties signed the affidavit prepared by the clerk, who then took the proposed sureties into the court room where the court was in session, and handed the affidavit to the presiding judge, that Alfred M. Day then surrendered himself into the custody of the officers of the court, and that then before the judge had spoken about the matter the assistant district attorney arose and moved that the bail of Day be increased to $2,000, which motion was granted by the judge, and that the sureties declined to offer themselves as sureties in the sum of $2,000 and retired.

John P. Manning, Esquire, clerk of the Superior Court for criminal business for Suffolk county testified that, after the events which were described by the preceding witness, Alfred M. Day was taken to the detention room, that he, Manning, took from him a receipt for the $800, and that he was ready to pay it over to the person entitled to it and so would have paid it over at any time until it was re-deposited, if the proper person had asked for it. There appeared on the back of the receipt for money deposited in lieu of sureties which was a part of the record, in pencil the following, to wit: " 1–21–04.

Money paid to defendant and then repaid into court." The witness further testified that after Alfred M. Day had remained in custody in the detention room for a number of hours, he, Day, said he would like to put up the money again if he could and so get his liberty; that this desire of Day was communicated to the judge; that the judge thereupon reduced the bail to the former sum of $800 provided the money was re-deposited, and that Day then re-deposited the $800 and was allowed to go on his own recognizance. The record of the re-deposit appeared on the back of the indictment in the case of Day. The $800 was not actually paid over, but remained in Mr. Manning's custody during all these transactions.

The defendant testified that he went to the plaintiff's office on the morning of January 21, 1904, and was asked by the plaintiff to sign the agreement above mentioned; that he, the defendant, asked Charles Day if it was all right; that Charles Day said yes, and that he then signed it; that nothing was said to the plaintiff before signing the agreement and he remembered nothing which was said after signing. The witness also testified, against the objection and exception of the plaintiff, that he was to pay the plaintiff $250 when he got his money. On cross-examination the defendant testified that he knew what the paper sued on contained, and that the paper contained the agreement which he made with the plaintiff.

Charles H. Day, called by the defendant, testified that he went with Alfred M. Day and the defendant to the plaintiff's office and was present when the agreement was signed by the defendant, that he read over the agreement before it was signed and told the defendant it was all right, and the defendant then signed it. The witness also was permitted to testify, against the objection of the plaintiff, that the plaintiff agreed for the $250 to get bonds for Alfred M. Day, and get the $800 released so that Greer would get it and clear the boy, and that after he got the $800 down and the boy free and cleared out, and everything all satisfactory, Greer was to pay $250. The plaintiff excepted to the admission of this evidence.

Alfred M. Day, called by the defendant, testified substantially that the plaintiff was employed to see what arrangement could be made with his (Day's) employer, the complainant in the em-

bezzlement case, and to get sureties for him in the sum of $800, and testified substantially as the other witnesses had testified about the proposed sureties going to court and his surrendering himself into court. He also testified that the plaintiff, in the presence of Charles H. Day, agreed to get " straw " bail for him, and when that was obtained to have him leave the State. This evidence was received against the objection and exception of the plaintiff.

The plaintiff denied that he ever said anything about " straw " bail, or getting " straw " bail, or advising Alfred M. Day to go out of the State. Charles H. Day whom Alfred M. Day said was present when the talk was had with the plaintiff about " straw " bail, did not testify about that subject.

At the close of the evidence, the plaintiff asked the judge to rule that on the above evidence the plaintiff was entitled to recover, and that the jury should be so instructed. The judge refused so to rule or so to instruct the jury, and the plaintiff excepted.

The plaintiff also asked the judge to instruct the jury as follows :

1. That, if the jury find that Alfred M. Day on January 21, 1904, surrendered himself in court, was taken in custody by the officers of the court, receipted for the $800, which had been deposited in lieu of sureties, and that the money after such surrender could have been taken or used by Day [or Greer], and was at his disposal, then the condition mentioned in the paper declared on in this action was performed, and the sum of $250 became due and payable to the plaintiff.

2. That on the whole evidence the plaintiff is entitled to recover the sum named in the paper declared on with interest from the date of the writ.

3. If the jury find that there was any valuable consideration for the agreement sued upon in this action, and also find that the $800 deposited with the court in lieu of bail for Alfred M. Day was released before this action was begun, then the plaintiff is entitled to recover in this action.

4. As matter of law the $800 was released by the surrender of Alfred M. Day, as shown by the evidence in this action.

The judge gave the third instruction requested as above, but

refused to give the first, second and fourth instructions requested, and the plaintiff excepted.

The judge, among other things not excepted to, instructed the jury that it was a question of fact for them to decide whether the $800 in Mr. Manning's hands was released by the surrender of Alfred M. Day, as shown by the evidence in this action.

In regard to the kind of bail which the plaintiff was to furnish, if he agreed to furnish bail, the judge said : " It is for you to consider whether it was or not effectual bail, so that Greer could get his money."  The judge also instructed the jury that they had a right to consider the facts and circumstances surrounding the transaction between these parties, in determining what was not plain or what was ambiguous in the written agreement, and if they found that the plaintiff had not performed what he had agreed to do, they should find for the defendant.  In point of fact, no bail was accepted by the court, and Greer did not get the $800 or any part of it until after the conviction and sentence of Alfred M. Day.

The jury returned a verdict for the defendant ; and the plaintiff alleged exceptions.

*W. B. Orcutt*, for the plaintiff, submitted a brief.

*V. Goldthwaite*, ( *W. C. Adams* with him,) for the defendant.

RUGG, J.    The agreement signed by the defendant, upon which this action is brought, is not under seal, and expresses the consideration in the conventional phrase, " one dollar and other valuable consideration."    The words, " hereinafter named " come immediately after, but they are surplusage, as no further consideration is stated, although there follows a statement of the condition, upon the happening of which the money shall become payable.    This is a definition of the time when the money shall become due and payable, rather than an amplification of the consideration.    For aught that appears upon the paper, the defendant's agreement may have been to pay to the plaintiff an indebtedness, not of himself but of X., amounting to $250, the moment of payment being fixed by the time when Y., who had been employed for the purpose, should procure an effectual release of the defendant's money deposited in lieu of bail for Alfred M. Day.    Under these circumstances it was permissible to show by oral evidence what was the actual induce-

ment for the agreement of the defendant, or, the agreement not being under seal, that there was no consideration. *Weed* v. *Jewett*, 2 Met. 602. *Clark* v. *Deshon*, 12 Cush. 589. *Snow* v. *Alley*, 156 Mass. 193. *Snow* v. *Alley*, 151 Mass. 14. *Goward* v. *Waters*, 98 Mass. 596. *Carr* v. *Dooley*, 119 Mass. 294. *Graffam* v. *Pierce*, 143 Mass. 386. *Howe* v. *Walker*, 4 Gray, 318. *Cardinal* v. *Hadley*, 158 Mass. 352. *Galvin* v. *Boston Elevated Railway*, 180 Mass. 587. *Drew* v. *Wiswall*, 183 Mass. 554. Under this well established rule the evidence of Charles H. Day, as to what in fact the plaintiff promised to Greer that he would do in return for the defendant's signature to the agreement, was admissible. It did not tend to contradict the writing, but merely to show the conditions, which were first to be performed by the plaintiff, before the promise of the defendant, expressed in the writing, should become operative. Upon the same principle, the testimony of Alfred M. Day was competent. The effect of his evidence was to show that a part of the consideration was the agreement of the plaintiff to procure " straw " bail. If this was true, it showed conduct grossly unprofessional, a fraud upon the court, and was such an illegal undertaking on the part of the plaintiff as to taint the entire agreement and render it unenforceable. *Taylor* v. *Jaques*, 106 Mass. 291. *Bishop* v. *Palmer*, 146 Mass. 469. Both the want of consideration and the illegality of the matter of agreement were seasonably pleaded by the defendant, and the proffered evidence from the two Days bore upon the issues.

With considerable hesitation, we are brought to the conclusion that the testimony of the defendant, that " he was to pay the plaintiff two hundred and fifty dollars when he got his money " was admissible, either on the ground of stating in substance that the consideration for the agreement was that, as a condition precedent to any obligation on the part of the defendant, the plaintiff was to make such arrangements respecting bail for Charles H. Day, as would enable the defendant to get his money, or upon the ground, in view of his previous testimony that no conversation took place between the plaintiff and himself at the time of signing the agreement, that this may have been the substance of a subsequent conference between the plaintiff and the defendant, resulting in a modification or extension of the written

instrument. The evidence also may have been admissible as showing the existence of a condition as a part of the consideration, upon the occurrence of which alone the agreement should become operative. Upon this view the conversation would not be in contradiction of the writing but in pursuance of the original purpose. *Wilson* v. *Powers*, 131 Mass. 539. *Rackemann* v. *Riverbank Improvement Co.* 167 Mass. 1. If these different views involve an assumption of conflicting evidence on the part of the defendant, the weighing of it and ascertaining where the truth lay was the province of the jury. It seems more reasonable to interpret the evidence in this way than to assume that the trial court violated so elementary a principle of law as to permit the defendant to give his interpretation of the words written in the agreement.

The first, second and fourth prayers for instructions presented by the plaintiff were properly refused. The first omitted all reference to the contention that the consideration had failed and was illegal, nor does it refer to the defendant, and therefore could not have been given. The second prayer required the judge to direct a verdict for the plaintiff, which is so obviously untenable as not to call for discussion. The fourth asked the judge to make a ruling as to the abstract meaning of the word "released," wholly apart from the connection in which the jury might find that it was used in the light of the testimony from the defence as to the consideration for the agreement. The court could not have been required to do this.

Exception also was taken to the ruling that it was a question of fact for the jury to decide, whether the $800 in Mr. Manning's hands was released by the surrender of Alfred M. Day in the manner disclosed by the evidence. This, however, was a mere paraphrase and amplification of the third prayer, which at the request of the plaintiff the judge had given. It does not lie in the mouth of a party to question the correctness of the substance of a ruling, which has been given at his own importunity. But upon broader considerations the ruling was refused properly. This belongs to the class of cases where the sense in which a word is used in a contract may be a question of fact in view of all the circumstances. Oral evidence is not admissible to contradict or vary the terms of the written contract, but

the situation and all the circumstances of all the parties, and the condition of the subject with which they are dealing, may be shown in order to properly apply the contract to the matters to which it relates. When there is conflicting evidence respecting these circumstances and conditions, then a proper case arises for the jury. The first relations between the plaintiff and the defendant apparently occurred when the agreement was signed. There was no consideration for the contract other than the agreement on the part of the plaintiff to do something further than what he had done already. But it required nothing to be done by the plaintiff to secure the release of the money by the surrender of Alfred M. Day into court. That was something he could do of his own volition, without the assistance of the plaintiff. No contention was made that a part of the service, which the plaintiff agreed to render, was the convincing of Alfred M. Day that he ought to surrender himself. It was at least sufficiently favorable to the plaintiff to leave the question for the determination of the jury. *Smith* v. *Vose Piano Co.* 194 Mass. 193. *Stoope* v. *Smith,* 100 Mass. 63. *Miller* v. *Stevens,* 100 Mass. 518. *Keller* v. *Webb,* 125 Mass. 88. *Proctor* v. *Hartigan,* 139 Mass. 554; *S. C.* 143 Mass. 462. *New England Dressed Meat & Wool Co.* v. *Standard Worsted Co.* 165 Mass. 328, 332. *Sargent* v. *Adams,* 3 Gray, 72. *Hebb* v. *Welsh,* 185 Mass. 335. *Buffington* v. *McNally,* 192 Mass. 198. *Bradford* v. *Manley,* 13 Mass. 139. *Weston* v. *Boston & Maine Railroad,* 190 Mass. 298. *MacDonald* v. *Longbottom,* 28 L. J. Q. B. 293; *S. C.* 29 L. J. Q. B. 256.

Nor is any error shown in the other portion of the charge, to which exception was taken. The contract was open to explanation respecting the consideration. It was a fair inference from the testimony produced in behalf of the defendant that the consideration for the agreement was that the plaintiff should procure effectual bail, and that Greer should thereby be enabled to get his money. The contention of the plaintiff was that all that he agreed to do was to procure bail for $800, and that his contract was performed when he procured two sureties sufficient for this amount and he was entitled to enforce his contract against the defendant, in spite of the fact that the amount of the bail subsequently was raised by order of the court.

In passing upon these two conflicting lines of evidence, the jury were correctly instructed that they had a right to consider all the circumstances attending upon the transaction in enabling them to ascertain the real consideration.

*Exceptions overruled.*