Argued April 16; reversed June 24; rehearing denied
September 9, 1941

# WILKENS *v.* WESTERN STATES GROCERY CO.

(114 P. (2d) 542)

Before KELLY, Chief Justice, and BAILEY, LUSK and
RAND, Associate Justices.

*James Arthur Powers,* of Portland, for appellant.
*Joseph McKeown,* of Marshfield (Andrew J. New-house, of Marshfield, on the brief), for respondent.

LUSK, J. Plaintiff brought this action against Western States Grocery Company, a corporation, Ocean Dock Terminal & Supply Company, a corporation, L. W. Rippey and Dorothy Rippey to recover damages for personal injuries caused, as she alleged, by a fall upon premises in Marshfield negligently constructed and maintained by the defendants. Upon the trial, orders of nonsuit were made in favor of Ocean Dock Terminal & Supply Company and the Rippeys on the ground that they had neither possession nor control of the premises where the accident occurred. The court ruled that such possession and control were exclusively in the defendant Western States Grocery Company (which will hereinafter be referred to as defendant), and submitted the issues of negligence, contributory negligence and damages, to the jury, which returned a verdict for the plaintiff. From the judgment thereon the defendant has appealed.

No question is urged as to the sufficiency of the evidence of negligence. The sole contentions of the defendant here—appropriately made below by motions for nonsuit, directed verdict, and an exception

to an instruction given—are that the court should have ruled as matter of law that the premises where plaintiff was injured were not in the possession or control of the defendant, or at most that that question, under the evidence, was one of fact to be determined by the jury.

Plaintiff was injured June 15, 1937, as she was leaving the warehouse of the defendant whither she had gone to purchase groceries. She slipped upon a platform adjacent to the warehouse entrance from which she had just emerged, and fell forward down a flight of seven steps to the street below.

The record shows that in August of 1935, L. W. and Dorothy Rippey, husband and wife, were in possession, under a contract of purchase, of a tract of water front property on Coos bay known as the Ocean Docks, on which were docks and wharves and warehouse buildings. Under date of August 22, 1935, the Rippeys entered into an agreement in writing with the defendant, by the terms of which the Rippeys agreed to construct a warehouse building on a portion of this land, not less than 25,000 square feet in area, and to lease this building to the defendant for a term of five years from date of its completion. Among other stated specifications for the building are the following:

"Said building shall cover at least 25,000 square feet, and shall have constructed in the Northwest corner thereof an office room 40 x 50 feet in a balcony under which there shall be an eight (8) foot clearance; which office shall contain three (3) private office rooms, each 12 x 12 feet. The remainder of the office space shall be one large room, and the walls of the office rooms shall be insulated with one-half (½) inch insulation board. A hot air pipe furnace heating plant shall be installed in a fuel room in said building which room

shall be constructed under the stairway leading from the main store to the office rooms. Two lavatories with toilet and wash basin in each shall be constructed in the main office room, and one toilet room shall be constructed in the main warehouse. *An entrance shall be constructed at the Northwest corner of the building with stairway leading from the exterior of the building; also an entrance to said office shall be constructed from the main warehouse with stairway.*" (Italics supplied.)

Subject to the rights and requirements of the lessors the lessee was granted the right, during its occupancy of the building, of "access to the water front and dock on the easterly side of the building and over the driveways and docks of lessors for the operation of automobile trucks."

It was provided:

"All cargo freight going into the warehouse hereby leased to Lessee shall be handled by Lessors, and for the handling of all such cargo by Lessors, Lessee shall pay the regular wharfage rates as per steamship tariff then effective  *  *  *  "

The lessors represented that "they have possession of the premises herein described under and by virtue of a contract for the purchase thereof from Reynolds Development Company, a corporation of the State of Washington."

The lessors covenanted and agreed "to maintain said warehouse building in a good tenantable condition for the use and purpose of lessee, or its assigns, as herein contemplated."

The lease also provides:

"It is understood that an accurate legal description of the land herein leased, together with complete plans and specifications for the building to be con-

structed by Lessors, shall be made up as soon as it is convenient for the parties and attached to this contract, and to become a part hereof to the same extent as if written herein; descriptions and specifications herein set forth are intended to be general only, and shall be superseded by the accurate descriptions and specifications when attached hereto * * * ''

The building was completed and occupancy taken by defendant some time prior to October 2, 1935, on which date L. W. Rippey addressed a letter to the defendant reading as follows:

''I am attaching to the lease a blue print showing the exact location of your building and the area, which I am leasing to you.

''I call to your particular attention to the space on the southwest corner outside of your partition where we have our car unloading, which part is not lease to you but you have the right to use same when not in use by the Ocean Dock Terminal & Supply Company. I also call to your particular attention to the twelve foot drive way on the north end of the blue print, outside of your wall partition, which is not under lease to you but you have the use of same when not in use by the Ocean Dock Terminal & Supply Company.''

On the blue-print referred to in the foregoing letter what purport to be the exterior lines of the defendant's building are sketched in with a pencil and there is a legend: ''Western States Grocery Building Area 25,360 square feet.'' The complete plans and specifications of the building, however, were never prepared, as the parties had agreed should be done, and no exact survey of the space occupied by the building was produced at the trial.

The platform and steps where the accident occurred are attached to the northwesterly corner of the build-

ing, were built at the same time, and the boards which make the floor of the platform are an extension of the warehouse floor. There is evidence that the steps, and perhaps the platform, are not within the northerly line of the Rippeys' property, but were built upon a city street, permission to use which Rippey obtained from the city.

At the northwesterly corner of the building is an entrance with a single door opening onto a flight of stairs which lead to the office rooms in the balcony. A short distance west of this entrance is an entrance with double doors into the warehouse proper. One ascending the steps from the street would, on reaching the platform, be facing these entrances about twelve feet away.

A ramp immediately adjoining the steps on the east led from the street to the dock and was an available means of access to defendant's warehouse. After the accident Rippey placed railings along the steps, but the railing on the side nearest the ramp came only to the third step, thus making it possible for persons to use the ramp part of the way and the steps part of the way in going to and from the platform or the dock. There was evidence that at times the ramp was obstructed by trucks so as to prevent its use by pedestrians.

Two other tenants besides the defendant occupied space on the dock premises—Ocean Dock Terminal & Supply Company and Pioneer Grocery Company. The former, a corporation organized and controlled by the Rippeys, occupied a portion of the premises lying to the south and east of the defendant's building, and included in its lease were two driveways, one of which is just north of the defendant's building. The steps and

platform at the northwest corner of defendant's building afforded a means of access to the premises of the other lessees.

The plaintiff, a regular customer of the defendant, had gone to the warehouse by means of the steps and platform and made her purchases; it was while leaving and immediately before reaching the steps that she fell and was injured.

■ The question in the circuit court, as here, was whether the platform and the steps were a part of the leased premises, and evidence was received showing the use to which the disputed area had been put and the control exercised over it by the interested parties and of other relevant facts. No question is raised as to the propriety of receiving such evidence. Most of it would have been admissible even though the controversy had been between the parties to the lease, 1 O. C. L. A. § 2-214, 4 Jones on Evidence (2d ed.) 2851, § 1558; since the plaintiff was not a party to the lease it was all properly received. 22 C. J., Evidence, 1291, § 1725; *Smith v. Farmers & Merchants National Bank*, 57 Or. 82, 85, 110 P. 410; *Pacific Biscuit Co. v. Dugger*, 42 Or. 513, 516, 70 P. 523.

There was evidence, which to some extent was contradicted, that representatives of the defendant supervised the construction of the steps and platform and that they were built in a manner to meet the expressed desires of the defendant and exclusively for its use; that the defendant objected to the placing of a railing along the platform because it would interfere with its use by the defendant's trucks for loading purposes; and that there was no other means of access to defendant's warehouse. On the other hand, there was evidence that this portion of the structure was built by Rippey as an entrance to his dock and

in order that the Ocean Dock Terminal & Supply Company (which was carrying out the lessors' obligation to handle the defendant's cargo freight) could use it in hauling merchandise from the boats in its jitneys and spotting such merchandise in the defendant's warehouse; that the steps and platform were used by sailors and longshoremen to reach the boats on the outer end of the dock and by members of the public generally; that Rippey, prior to the plaintiff's accident, caused mulsified asphalt and sand to be put on the platform and after the accident furnished roofing material to be laid on the steps and, as stated, caused railings to be built along the steps. Rippey claimed that he did these things at the request of representatives of the defendant. The defendant, by its testimony, denied that it had ever used the platform for loading purposes. Rippey testified that he asked permission from Homer Gilfillan, defendant's foreman, to use the platform for the jitneys of the Ocean Dock Terminal & Supply Company in hauling cargoes. Gilfillan denied this. The platform was of the same construction as the dock, and it would not have been a rash inference that it was intended to be a part of the dock.

The circuit court ruled that the language of the lease itself determined the question of control over the area in controversy, and instructed the jury that the defendant was charged with the duty of maintaining the platform and steps in a reasonably safe condition. Its decision was based upon the clauses which we have italicized in the specifications for the building quoted above. We set them out again:

"An entrance shall be constructed at the Northwest corner of the building with stairway leading from

the exterior of the building; also an entrance to said office shall be constructed from the main warehouse with stairway."'

■ It was the view of the court that the entrance and stairway described in the first of these clauses were the platform and steps on which the accident occurred. If one could be reasonably certain of this interpretation, then the court was right in instructing the jury that it was the defendant's duty to maintain the platform and steps in a reasonably safe condition. 32 Am. Jur., Landlord and Tenant, 695, § 817. But, we think that the language is so ambiguous, when applied to the building actually constructed, that its meaning cannot be definitely ascertained without the aid of parol evidence to explain it. The ambiguity arises from the fact that while the parties speak of a stairway leading from the exterior of the building, they fail to state what the stairway shall lead *to*. Had no other stairway than the one on which the accident occurred been contemplated or built, the question would probably not be here. But the first of the quoted clauses of the lease describes the entrance and stairway leading to the office with quite as much aptness as it describes the area in controversy. That entrance is at the northwest corner of the building and the stairway upon which it opens leads from the exterior of the building. The description of the entrance and stairway, moreover, follows immediately upon the specifications relative to the office rooms, while the second clause provides for an entrance from the warehouse to the office. And, since the lessors by the terms of their lease agreed to construct the building on land they were under contract to purchase from Reynolds Development Company, and the steps and possibly

a portion of the platform were built on city property, it is arguable that they were for that reason not considered a part of the leased premises.

At all events, the proper interpretation of the language and its application to the subject-matter are so permeated with doubt that, as we have said, evidence was required to make the meaning certain. This evidence, as already indicated, took the form of showing the uses to which the platform and steps could be and were put, and of delineating the conduct of the parties with reference to the subject-matter of the controversy, and was conflicting, as were the inferences which might be drawn from some of the uncontradicted facts, and it therefore became the duty of the jury to determine as a mixed question of law and fact whether the portion of the premises where the plaintiff met with her accident was identical with the entrance and stairway described in the lease. 13 C. J., Contracts, 785, § 997; 17 C. J. S., Contracts, 1284, § 617; *Way v. Greer*, 196 Mass. 237, 246, 81 N. E. 1002; *Cutler v. Spens*, 191 Mich. 603, 615, 158 N. W. 224; *O'Connell v. Ward*, 130 Minn. 443, 446, 153 N. W. 865; *Sabin v. Cameron*, 90 Neb. 347, 350, 133 N. W. 422; *First National Bank v. Dana*, 79 N. Y. 108, 116.

■ If, as we have indicated, the ambiguous language in controversy were found to refer to the platform and steps where the plaintiff fell, the defendant would be liable to the plaintiff for negligence in failing to maintain that area in a reasonably safe condition for the use of its invitees, and the covenant of the lessors contained in the lease to make repairs would not relieve the defendant from the consequences of its neglect. 32 Am. Jur., Landlord and Tenant, 698, § 819; 36 C. J., Landlord and Tenant, 245, § 961; *King*

*v. Cooney-Eckstein Company*, 66 Fla. 246, 63 So. 659,
Ann. Cas. 1916C, 163; *Conners v. Rogers*, 29 Oh. App.
513, 163 N. E. 918; *Burdick v. Cheadle*, 26 Oh. St. 393,
398, 20 Am. Rep. 767; *Mitchell v. Thomas*, 91 Mont.
370, 8 P. (2d) 639. But, though the meaning of the
disputed clause were found to be otherwise, a ques-
tion would still remain under the evidence whether
the parties intended the area to be included within the
leased premises. The defendant contends that in that
event it would follow as a matter of law that the
lessors and not the defendant were responsible for
the proper maintenance of the steps and platform.
The defendant invokes the general rule approved by
this court in *Massor v. Yates*, 137 Or. 569, 3 P. (2d)
784, and *Lyons v. Lich*, 145 Or. 606, 28 P. (2d) 872,
that the owner of an apartment house or office build-
ing retains control of entrances and passageways
used in common by the tenants and is liable to a tenant
or the invitee of a tenant for injuries sustained as the
result of the failure to maintain such common entrances
and passageways in a reasonably safe condition. See
32 Am. Jur., Landlord and Tenant, 699, § 821; 2 Re-
statement Torts, § 360. In such cases ordinarily it is
manifest that the portions of the premises used in
common by the tenants are not leased to the tenants
or any of them but remain under the control of the
landlord, and, as the court said in *Starr v. Sperry*,
184 Iowa 540, 167 N. W. 531:

"The only way the rooms or apartments can be
enjoyed is by access through the ways referred to;
and the parties to the demise must have intended—as
is necessarily to be implied as a basis, without which
the whole transaction would be futile—that the land-
lord would maintain them, as essential to the enjoy-
ment of the premises demised, and in a reasonably

safe condition for the use of the tenants, and also of those persons who necessarily go up and down the stairs and through the hallways in the ordinary course of business with the tenants.''

See *Gibson v. Hoppman*, 108 Conn. 401, 143 Atl. 635, 75 A. L. R. 148.

■ But there was ample evidence in the instant case from which the jury might have found that the parties intended to include the steps and platform within the leased premises, and that without regard to the disputed clause of the lease. Mention need be made only of the testimony that defendant's representatives supervised the construction of the steps and platform, that the platform is attached to defendant's building, and that such use as the lessors, Ocean Dock Terminal & Supply Company, and others made of it was with the permission of the defendant. On the other hand, that use and the making of repairs by the lessors constituted evidence tending to show that they reserved control of that area in themselves. 36 C. J., Landlord and Tenant, 252, § 974; *Ferrari v. Beaver Hill Coal Company*, 54 Or. 210, 223, 94 P. 181, 95 P. 498, 102 P. 175, 1016; *Friendly v. Ruff*, 61 Or. 42, 47, 120 P. 745; *Hendrickson v. Astoria*, 127 Or. 1, 270 P. 924. If it be said that no inference unfavorable to the lessors could be drawn from the fact of making repairs because the lease imposed this obligation upon them, the answer is that the very question for decision is whether the portion of the premises to which the repairs were made were, in fact, leased. We think that it was for the jury to determine from a consideration of all the facts and circumstances in evidence whether the steps and platform constituted a common entrance for the use of the defendants and the other tenants

of the dock premises, control over which was reserved by the lessors, or whether possession and control passed to the defendant under the lease. "Parcel or no parcel is always a question for the jury." *Manning v. Fitzgerald,* (1859) 27 Law. J. Rep. (N. S.) Exch. 57. See *Conroy v. Maxwell,* 248 Mass. 92, 142 N. E. 809; *Beaulac v. Robie,* 92 Vt. 27, 102 Atl. 88, 93 Vt. 275, 107 Atl. 107; *Hurlburt v. Sherman,* 116 Conn. 102, 163 Atl. 603; *Vinci v. O'Neill,* 103 Conn. 647, 131 Atl. 408; *Cuscuna v. Rood,* 289 Mass. 213, 193 N. E. 795; *Grant v. Schilling,* 170 N. Y. S. 102; *Fitzsimmons v. Hale,* 220 Mass. 461, 107 N. E. 929.

We conclude that it was error for the court to instruct the jury as a matter of law that the defendant was charged with the duty of maintaining the disputed area in a reasonably safe condition, and that the judgment must, therefore, be reversed and the cause remanded for further proceedings.