Submitted on motion to dismiss December 1, allowed December 9, 1953, argued March 16, affirmed April 20, 1955

MOREY, Administratrix *v.* REDIFER et al.

264 P. 2d 418
282 P. 2d 1062

*Maguire, Shields, Morrison & Bailey,* of Portland, for the motion of respondents DeFeyter and Johnson;

*Bedingfield & Grant,* of Coos Bay, for respondent Irion.

*Claude H. Giles* and *Flegel, Vosburg, Joss & Hedlund,* of Portland, contra.

LUSK, J.

The respondents, E. B. DeFeyter and Roy J. Johnson, doing business as Power City Electric Co., and Clyde E. Irion have moved to dismiss the appeal as to them.

The action is one for wrongful death. The appellant, J. C. Redifer, doing business as J. C. Redifer Co., and the moving respondents were joined as defendants. On the trial DeFeyter and Johnson were granted a judgment of involuntary nonsuit, and the jury found in favor of Irion and against the appellant Redifer. Redifer served written notice of appeal on his co-defendants as well as on the plaintiff. In support of the motion to dismiss it is urged that the moving respondents are not adverse parties upon the appeal.

Where written notice of appeal is given it must be served upon "such adverse party or parties as have appeared in the action or suit, or upon his or their attorney". § 10-803, OCLA.

An adverse party within the meaning of the statute is a party whose interest in relation to the judgment is in conflict with the modification or reversal sought by the appeal. *Silbaugh v. Guardian Building & Loan Ass'n.,* 164 Or 286, 291, 297, 97 P2d 943, 99 P2d 1017, 101 P2d 420; *In re Brooks' Estate,* 167 Or 428, 432, 433, 118 P2d 103.

Neither of the moving respondents has any such interest in relation to this appeal. A reversal or modification of the judgment would not affect them in the slightest. They have each of them a judgment in their

favor in an action brought against them by the plaintiff and from which the plaintiff has not appealed. These judgments are a bar to any further proceedings against them. Counsel for the appellant are mistaken in their assumption that a reversal of the judgment against him would revive the action against the other defendants. The case of *Wilkens v. Western States Grocery Co.,* 167 Or 103, 114 P2d 542, relied on by the appellant, will bear no such interpretation. In that case there was a judgment against Western States Grocery Company, one of four alleged joint tort feasors. The other defendants were granted judgments of involuntary nonsuit. Western States Grocery Company served notice of appeal on the plaintiff alone. We held that reversible error was committed on the trial and remanded the case for a new trial. It was not necessary for us to say, because it went without saying, that the parties on the new trial would be the same as the parties on the appeal, namely, the plaintiff and Western States Grocery Company, and no others. Although we necessarily considered the legal relationship of the various defendants one to another, as disclosed by the evidence, we decided only that the court erred in refusing to submit to the jury the question whether Western States Grocery Company had possession and control of the premises on which the plaintiff was injured. Any possible, incidental reflection from that ruling upon the correctness of the trial court's orders granting the other defendants judgments of nonsuit could not, and did not, affect the interests of those defendants, for they were out of the case, and neither this court nor any other had power or jurisdiction to bring them back in.

The moving respondents are neither necessary nor proper parties to this appeal, and their motions to dismiss are allowed.

198

ON THE MERITS

*Arthur S. Vosburg* argued the cause for appellant.

*Harry A. Slack,* of Coquille, argued the cause and filed a brief for respondent.

Before WARNER, Chief Justice, and TOOZE, LUSK and BRAND, Justices.

TOOZE, J.

This is an action for damages for the death of Alvin Jess Morey, plaintiff's intestate, resulting from the alleged negligent operation by defendants of two motor trucks. The case was tried to a jury. Judgment of involuntary nonsuit was entered in favor of defendants E. B. DeFeyter and Roy J. Johnson. The jury returned a verdict in favor of defendant Clyde E. Irion against plaintiff, and in favor of plaintiff against defendant J. C. Redifer for the sum of $15,000. Judgment was entered accordingly, from which defendant Redifer appeals.

The action is prosecuted by Hazel Morey, as administratrix of the estate of Alvin Jess Morey, deceased, for the benefit of herself, as widow, and for the benefit of one surviving grandchild and dependent of decedent, pursuant to the provisions of § 8-903, OCLA (ORS 30.020).

Defendant J. C. Redifer dba J. C. Redifer Co., hereafter referred to as defendant, is engaged in the motor trucking business, with headquarters at Portland, in Multnomah county, Oregon, and owns and operates a number of motor trucks. Defendants E. B. DeFeyter and Roy J. Johnson, copartners, dba Power City Elec-

tric Co., and hereafter referred to as Electric Co., are engaged in the electrical contracting business, with headquarters at Spokane, Washington. Defendant Clyde E. Irion owns and operates his own motor truck and is engaged in log hauling.

Prior to the time of the accident involved in this action, the Electric Co. had entered into a contract with the United States government for the construction of an electric power line between Bandon and Gold Beach, in Coos and Curry counties, in Oregon. Under the contract the United States furnished the necessary poles for construction of the transmission line and delivered them to Electric Co. at Warner, Oregon. The contract was subject to the conditions imposed by the Davis-Bacon Act, 40 USCA § 276(a), which after providing for certain minimum wages on government contracts provides: " * * * and the further stipulation that there may be withheld from the contractor so much of accrued payments as may be considered necessary by the contracting officer to pay to laborers and mechanics employed by the contractor or any subcontractor * * *."

On April 1, 1952, Electric Co. entered into a contract with defendant Redifer for the hauling by defendant of the power line poles from Warner, Oregon, to the job site in Coos and Curry counties. The contract is in writing and reads as follows:

"Electrical Contractors
Spokane, Washington
April 1, 1952
"J. C. Redifer Company
2309 Southeast 26th Avenue
Portland 15, Oregon
    Attention: Mr. J. C. Redifer
    Subject: Contract 16D-8613, Bandon-Port
             Orford and Port Orford Gold Beach,
             115 K.V. Transmission Line

"Gentlemen:

"We wish to confirm a verbal understanding reached between our Mr. Roy Sargent and your company covering your proposal to deliver poles on the subject transmission line as follows:

"The J. C. Redifer Company agrees to load the government furnished poles from the yard at Warner, Oregon and transport them to point as near as possible with truck and trailer to the structure site where same will be unloaded in an approved manner and left ready for skidding to the structure location by others.

"J. C. Redifer Company will be responsible for damaged and broken poles as a result of his operations in loading, transporting, and unloading and will furnish Power City Electric Company, Certificates of Insurance covering Public Liability and Property Damage, protecting Power City Electric Company against all liabilities arising from any accidents on the hauling job.

"J. C. Redifer Company agrees to haul these poles sufficiently in advance of our schedule so that poles will at all times be delivered in advance of our operations and in the event of failure to do so, Power City Electric Company may elect to complete the balance of the work by other means or contracts after five days notice has been given.

"For the faithful performance of the work outlined herein Power City Electric Company agrees to pay J. C. Redifer Company at the flat rate of $27.50 (Twenty seven dollars fifty cents) per pole.

"*J. C. Redifer employees will be carried on the Power City Electric Company payroll and the amounts paid these employees with employer Social Security and Industrial Insurance contributions added will be deducted from the amounts due J. C. Redifer Company for poles delivered at the fees specified above.*

"The balance of the monies due will be paid J. C. Redifer Company on or about the 15th day of each calendar month, less 15% (Fifteen per cent)

retained to assure completion of the work in accordance with this letter contract.

"The retained percentages will be paid thirty days after the completion of the work.

"Please indicate your acceptance of this agreement by signing in the space provided below and returning one copies [sic] for our files.

"Very truly yours,
POWER CITY ELECTRIC COMPANY
[Sgd.] E. B. DeFeyter
E. B. DeFeyter
"EBD :nb
Accepted for the J. C. Redifer Company
By [Sgd.] J. C. Redifer." (Italics ours.)

Pursuant to the terms of this contract, all employes of Redifer who were engaged on the pole-hauling job were carried on the payroll of Electric Co. Their wages, less social security and other required deductions, were paid directly to them by Electric Co. The amount of their wages was deducted from the several sums becoming due defendant under the contract. It is obvious that this portion of the contract respecting the payment of wages to employes was incorporated into the agreement pursuant to government requirements.

In performance of the terms of the contract on his part to be kept and performed, defendant furnished and maintained a number of motor trucks with trailers and provided the drivers thereof. One of such trucks was a 1944 model Studebaker truck, with a two-wheel trailer attached thereto, the combined length of truck and trailer being 61½ feet. Immediately prior to and at the time of the accident involved in this case, which accident occurred about 5 p. m. on May 23, 1952, this truck with trailer (empty) was being operated and driven by one Jack Gordon Baker, an employe, in a northerly direction on highway No. 101 in Coos county.

Immediately preceding the accident, defendant

Irion was operating his truck and trailer, loaded with logs, in a northerly direction on said highway, ahead of the truck being operated by Baker. Baker attempted to overtake and pass the loaded log truck while approaching a blind curve in said highway. While Baker was in the act of passing the log truck, the automobile in which Alvin Jess Morey was riding approached from the north. A collision between the Baker truck and the automobile appeared imminent. Baker attempted to swing his truck to the right in front of the log truck, but in so doing the right rear end of his trailer struck the left front end of the log truck, thereby causing the trailer to be thrown with great force into the Morey automobile. As the direct result of this collision, Morey suffered personal injuries, from the effects of which he died within a short time thereafter.

Very little if any question was raised as to the negligence of Baker, and, of course, no claim of contributory negligence was made as to the decedent. The trial court found that there was sufficient evidence in the record to submit to the jury the question of whether defendant Irion was negligent, but the jury found in Irion's favor.

The principal question involved on the trial and also in this court relates to the status of Baker at the time of the accident; that is, by whom was he employed? Was he an employe of the defendant, or was he an employe of the Electric Co.? The several assignments of error on this appeal bear directly or indirectly upon that question.

Based upon the provisions of the above quoted contract and the testimony of defendant (called as an adverse witness by plaintiff), the learned trial judge found as a matter of law that Baker was the employe of defendant, and entered a judgment of involuntary nonsuit in favor of the Electric Co. However, in its

instructions to the jury, the trial court submitted as a question of fact to the jury whether Baker was an employe of defendant.

As his first assignment of error defendant contends that the trial court erred in sustaining plaintiff's objections to numerous questions directed to one Frances Kuensting, a witness for defendant, relating to certain proceedings in a claim for compensation pending before the State Industrial Accident Commission of Oregon. The witness, as a stenographic reporter, made a record of those proceedings. Defendant made an offer of proof. From that offer of proof it appears that Jack Gordon Baker was accidentally killed August 22, 1952, as the result of a collision between two motor vehicles, one of which he was driving. A claim for compensation was filed with the commission by the surviving widow. A hearing upon the claim was held by the commission on March 18, 1953. E. B. DeFeyter appeared as a witness for the claimant and testified in support of the claim. The witness recorded his testimony. DeFeyter testified that Baker was in the employ of the Electric Co. We quote briefly from the record made on the offer of proof:

"Q Did Mr. DeFeyter in response to this question make the following answer: 'Q That agreement, now, with Mr. Redifer, I wonder if we could have that, please? (agreement presented) Did he make this answer: 'At that time this statement was made with Mr. Redifer, our superintendent, Mr. Sargent, talked to Mr. Redifer and it was our understanding that the men that had formerly been employed by Mr. Redifer would be transferred to our employ; Mr. Redifer would furnish trucks and equipment for hauling this material; that the price he would receive for this equipment rental would be the difference on the contract price he had agreed upon and the amount of payroll for the men used in operating that equipment. Mr. Redifer did

furnish trucks and equipment for hauling this material; that the price he should receive for his equipment rental would be the difference of the contract price he had agreed upon and the amount of payroll for the men used in operating that equipment.' Did he so answer?

"A Yes, sir."

On the offer of proof, the witness testified to many more questions directed to, and answers given by, DeFeyter upon the hearing before the commission, all designed to establish the fact before the commission that Baker was in the employ of Electric Co.

Upon conclusion of the offer of proof, plaintiff's attorney restated his objection to the evidence as follows:

"Mr. Slack: I want to restate my objection. I object to all, to the admission of this testimony on the ground and for the reason that any testimony or statement of E. B. DeFeyter or any person is hearsay and not binding upon the plaintiff in any way and for the further reason it is not the best evidence and for the further reason it is not an admission against interest as the Power City Electric Co. is no longer in the case and for the further reason that my client was not present at the time of the hearing and did not have a chance to cross examine Mr. DeFeyter or any other witness."

■ The trial court sustained plaintiff's objections and rejected the offer or proof. In this the trial court committed no error.

An offer of proof was not separably made as to each question and answer to which the witness Kuensting's attention was directed. On the contrary, a single offer of proof was made incorporating the entire record of DeFeyter's examination as a witness before the commission. Many of the answers given by DeFeyter were based upon the interpretation he placed upon the contract between his company and Redifer;

they amounted to mere conclusions or opinions, involing mixed questions of law and fact. Such answers would have been objectionable in any circumstances and subject to a motion to strike. For example, we quote the following:

"Q Question: 'Who hired Mr. Baker?' Answer 'Our superintendent, Mr. Sargent.' Was that testimony given?

"A Yes sir.

"Q Next page, the following question was: 'Now I wonder, did he—how could he hire him when he had this agreement here?' A '*As I understand that agreement,* Redifer would recommend him to you and then he hired him. Wouldn't be any different than going to the Union, they send out a man and hire him, whether you went to a hiring agency and Mr. Redifer hired this man because operating the equipment.' Did he so testify?

"A Yes sir.

"Q And the same page: 'The drivers, so far as you know, came with the trucks though?' Answer: 'As far as I know.' Question: 'And had been hired by Mr. Redifer and came with the truck on the job? You didn't hire them, is that what you are getting at?' Answer: 'Yes, I claim I did.' Was that question asked and answer given?

"A Yes.

"Q 'Well, did you go out and get the man to go to work on the truck, having the truck empty somewhere?' Answer: 'We took the men that were recommended by Mr. Redifer as our employees and time was turned in to our payroll office the same as anybody else's and the payroll checks were issued.' Did he so answer?

"A Yes, sir.

"Q Question: 'I understand that. You showed us your checks here, and withholding from them, but the question is: Who hired them.' Answer: *It is my opinion we hired them.* That is a pretty hard question to answer. If you call a labor agency to send out a man, they recommend a man, still,

the man becomes your employe and not the labor agency's.' Was that question asked and answered? "A Yes, sir." (Italics our.)

■ For the reason that the offer of proof contained testimony that was clearly objectionable, if for no other reason, the offer was properly rejected by the trial court. The objectionable portions contaminated the whole. The trial court was not required to separate the good from the bad. *Cosgrove v. Tracey,* 156 Or 1, 6, 64 P2d 1321; *Morris v. DuPont De Nemours & Co.,* 346 Mo 126, 139 SW2d 984, 129 ALR 352, 358; 53 Am Jur 89, Trial, § 99; 88 CJS 187, Trial, § 82a.

■ The offered testimony of DeFeyter before the Industrial Accident Commission tended to vary the terms of the written contract between his company and Redifer. The agreement speaks plainly of "Redifer's employees" as the persons who are to be carried on the payroll of Electric Co., and Baker was one of those employes. Had the issue been directly between defendant and Electric Co., it is manifest that this type of evidence would not have been admissible. However, as defendant contends, that rule does not apply when the controversy is between one of the parties to the written agreement and third persons. In such cases parol evidence is admissible to show the true agreement, even though it vary the terms of the written instrument. The rule is stated in *Pacific Biscuit Co. v. Dugger,* 42 Or 513, 516, 70 P 523, 525, as follows:

"" * * The rule that an instrument in writing cannot be contradicted or varied by parol evidence applies only between the parties and their privies, and cannot be invoked in controversies between third parties and any of the parties to the contract [Citing cases]."

Also see *Wilkens v. West. States Groc. Co.,* 167 Or 103, 109, 114 P2d 542; *Smith v. Farmers & Merchants Nat. Bank,* 57 Or 82, 84, 110 P 410.

However, that rule does not support the admissibility in this case of any of the testimony given by DeFeyter before the Industrial Accident Commission. Had defendant called DeFeyter as a witness on the trial of this case, the rule would have been applicable to the plaintiff, but DeFeyter was not called as a witness.

Defendant further contends that the testimony of DeFeyter before the Industrial Accident Commission was admissible under the rule that the admission against interest of a defendant is admissible on behalf of a codefendant against the complainant. As authority for his position, defendant cites *Carithers v. Jarrell,* 20 Ga 842; 20 Am Jur 538, Evidence, § 638; 31 CJS 1097, Evidence, § 318; 14 ALR 22, 50. The authorities cited are not in point. For example, the statement in 31 CJS 1097, supra, is simply this:

"The admission of a defendant against his own interest and in favor of a codefendant is competent for the codefendant."

The only authority cited for the foregoing statement is *Cade v. Hatcher,* 72 Ga 359, and 22 CJ 352, note 60. In this Georgia case the court held that an admission against interest of one defendant, and in favor of his codefendant, contained in the answer of the defendant making the admission, is evidence for the codefendant. The same rule is announced in *Carithers v. Jarrell,* supra, but that is a far cry from the situation in the instant case. The admissions against interest which defendant sought to introduce into evidence in this case were not contained in the pleadings, nor were they made on the trial of this case.

It is obvious that all of the testimony given by DeFeyter on the hearing before the accident commission is pure hearsay insofar as plaintiff is concerned. She was in nowise a party to that hearing, nor was

she present when it was held. She was afforded no opportunity to object to improper questions and answers, nor to cross-examine. Manifestly, such evidence is inadmissible against her. There is no merit in defendant's first assignment of error.

As his second assignment of error, defendant charges that the trial court erred in giving the following instruction to the jury:

"Now, there has been introduced in this case an exhibit known as Plaintiff's Exhibit A-1 which purports to be the contract between Redifer and De-Feyter and Johnson, partners doing business as Power City Electric Co., and if you should find that this is the contract which was entered into between these parties, then under the contract Redifer agreed to haul poles for the Power City Electric Co., or these persons doing business as such, for the flat rate of $27.50 per pole from the points indicated, and if you find that Baker was the employee of Redifer but that he was carried on the payroll of the Power City Electric Co. for some purpose but that he actually was the employee of Redifer, then, of course, Redifer would be liable for his acts within the scope of his authority and, if he was acting within the scope of his authority driving this empty truck at the time and if you find that he was the employee of Redifer, then Redifer would be liable for any alleged negligence on the part of Baker. Whether or not Baker was negligent is a question of fact for you to determine and not for me to tell you. I have no right to tell you or intimate to you what the facts are. I merely tell you if you find the facts to be a certain way, then certain provisions of the law apply."

In our consideration of this instruction attention must be given to other parts of the record. At the outset of the trial, defendant stipulated in open court that the contract quoted above was the contract between himself and Electric Co. respecting the work

being performed when the accident occurred. Redifer was called by plaintiff as an adverse witness. During the course of his examination, he made the statement that Baker was an employe of Electric Co. and was not employed by him. However, it was perfectly apparent from his testimony that this statement was based entirely upon his interpretation of the terms of the written contract, and not upon anything else, which led the court itself to make the following inquiry:

"COURT: Was Mr. Baker employed in carrying out this contract marked Plaintiff's Exhibit A-1?
"A  Was he working on this contract, you mean?
"Q  Yes.
"A  Yes, he was."

On his case in chief and as a witness on his own behalf, Redifer was permitted to testify along the same lines covered by the offered testimony of De-Feyter (that given before the accident commission). He gave his own interpretation of the provisions of the contract between himself and Electric Co., it being somewhat similar to that contained in the DeFeyter testimony. At no time, however, did he deny that the written contract contained all the terms of the agreement made between the parties, nor, indeed, in the light of the stipulation made at the outset of the trial, could he deny it. Neither did DeFeyter in his testimony before the Industrial Accident Commission claim that the written contract did not contain all the terms of the agreement between Electric Co. and Redifer. But defendant in his testimony maintained that his arrangement with the Electric Co. was in the nature of a leasing agreement, with him merely furnishing and maintaining the necessary motor trucks and trailers. That was his conclusion. It was not based upon testimony as to what anyone actually said prior to

the time the written agreement was entered into, nor afterward. Moreover, such conclusion directly conflicts with the plain terms of the written contract. Under the contract "the J. C. Redifer Company agrees to *load* the * * * *poles* * * * *and transport them* * * * and "J. C. Redifer agrees to *haul these poles*" at the flat rate of $27.50 per pole. (Italics ours.) Furthermore, everything done by the parties under the contract was consistent with its plain terms which on their face showed that the truck drivers were defendant's employes.

Over plaintiff's objection, defendant testified to a conversation he allegedly had with DeFeyter prior to the execution of the written contract. He was examined as follows:

"Q I am talking now and limiting it to the question of what your arrangement between him and you and your understanding with him as to the furnishing of trucks and employment of men and all about it.

"* * * * * [Objection made and overruled.]

"Q Do you understand the question, Mr. Redifer?

"A Yes.

"Q Tell the jury.

"A My arrangement was this: I was to send the trucks down to this job and pay all the operating expenses of the trucks and Power City was to take the men over at the job and pay the men and they would be under their employ."

Manifestly, that does not constitute any evidence of an agreement other than the one actually entered into in writing. The statement "they would be under their employ" is simply Redifer's conclusion; it is in direct contradiction of the writing itself, wherein "they" are specifically designated as "Redifer employees".

Redifer's son, along with the other employes of Redifer, was carried on the payroll of Electric Co. Redifer, Jr., was foreman in charge of the trucks and drivers. When asked as to who had hired his son on the job and who paid his wages, Redifer testified that Electric Co. had done so. Then he was examined as follows:

"Q  Do you know who specifically hired him for the Power City Electric Co.?

"A  For the Power City Electric Co.?

"Q  Yes.

"A  Well, I sent him down there.

"Q  Who hired him when he was down there? Who made the arrangements with the foreman?

"A  I insisted he be foreman when he went down.

"Q  Why?

"A  Because my trucks had to have somebody that was absolutely—so that I was sure somebody was seeing after my interests, my trucks. There was a lot of money in them."

On cross-examination, Redifer testified:

"Q  Now, as a matter of fact, you hired the men —you hired the truck drivers yourself, didn't you?

"A  I did.

"Q  And your son was in charge of these trucks and the truck drivers, wasn't he?

"A  That is right.

"Q  If he had wanted to, he could have pulled a truck off the job, couldn't he?

"A  I am not sure about that, if he could.

"Q  Well, I will ask this question: If he had wanted to and felt like the man wasn't doing the job, he could have pulled that truck driver off the job?

"A  Certainly he could have fired the truck driver; he was foreman; any foreman can fire the men on any job."

On further cross-examination, Redifer testified:

"Q How old is your boy, J. C. Redifer, Jr.?
"A About 29.
"* * * * *

"Q He was in charge of the men and the trucks on this job, wasn't he?
"A He was foreman.

"Q You sent him down, didn't you?
"A Yes, I sent him down."

Defendant's son was not called as a witness; nor was anyone else called to testify to any agreement or understanding other than that expressed in the written contract.

Defendant's entire testimony, by which he attempted to vary the terms of the written contract, when carefully analyzed, amounts to no more than his own interpretation of the written agreement and its effects. He did not testify to any terms or conditions agreed upon orally that had inadvertently, or otherwise, been omitted from the written contract. His testimony consists largely of opinions and conclusions.

However, it was in the light of this testimony no doubt that the trial court left to the jury the question of whether Exhibit A-1 was the contract between defendant and Electric Co., and whether Baker was an employe of defendant.

■ The provisions of the written contract between the parties are plain and unambiguous. The intention of the parties is made clear by the language employed. In such circumstances, it was the function of the court to interpret the contract and declare its legal effects. *City of Reedsport v. Hubbard*, — Or —, 274 P2d 248, 255.

■■ Considering the record as a whole, the trial court should have instructed the jury outright that

Exhibit A-1 constituted the contract between the defendant and Electric Co., and that under the express terms of that contract Baker was the employe of defendant. That is the position taken by the court in entering judgment of involuntary nonsuit in favor of Electric Co. It was the court's interpretation of the written contract, and, in our opinion, it was a correct interpretation.

Evidently it was out of an abundance of caution that the careful trial judge submitted these questions to the jury as questions of fact. That was of benefit to defendant; a benefit to which he was not entitled. If anyone was prejudiced thereby, it was plaintiff.

Moreover, in the light of the stipulation at the outset of the trial that Exhibit A-1 was the contract between defendant and Electric Co., and the testimony of defendant that Baker was working under this contract, any testimony on the part of Redifer tending to falsify that stipulation and evidence was inadmissible. When a party to an action or suit stipulates or testifies deliberately to a concrete fact, not as a matter of opinion, estimate, appearance, inference, or uncertain memory, but as a considered circumstance of the case, his adversary is entitled to hold him to it as a judicial admission. If no mistake is claimed or shown, the party so stipulating or testifying to a concrete fact cannot have the benefit of other evidence tending to falsify it. *Valdin v. Holteen and Nordstrom,* 199 Or 135, 144, 260 P2d 504; Note, 169 ALR 798, 800.

What we have already said disposes of the remaining assignments of error, as well as the first two. The defendant had a fair trial. We find no prejudicial error in the record.

Judgment affirmed.