Argued October 4, affirmed November 28, 1950

# GARRETT *v.* EUGENE MEDICAL CENTER,

## A CORPORATION

224 P. (2d) 563

*Windsor Calkins,* of Eugene, argued the cause for appellant. On the brief were Calkins & Calkins, of Eugene.

*Hale G. Thompson,* of Eugene, argued the cause for respondent. With him on the brief was E. B. Sahlstrom, of Eugene.

Before LUSK, Chief Justice, ROSSMAN, HAY, LATOU-RETTE and WARNER, Justices.

ROSSMAN, J.

This is an appeal by the defendant from a judgment, based upon a verdict, entered by the Circuit Court in favor of the plaintiff in an action instituted to recover damages for a personal injury which the plaintiff suffered in the freight elevator of a building owned by the defendant.

The plaintiff, as a member of a partnership entitled Garrett Appliance Company, was a tenant of the defendant's building. December 10, 1948, at 9:00 p. m., when he was upon the first floor of the building, and no light was burning near the elevator, the plaintiff undertook to enter it, but, due to the fact that it was then at the second floor, he fell to the bottom of the shaft and received the injuries for which the attacked judgment awarded him damages. At the first floor the open, that is, the entry, side of the elevator shaft was equipped with a wooden door or gate capable of moving to the ceiling when one wished to enter the elevator and of descending to the floor when the elevator was absent from the floor. The plaintiff claims that when he sought to enter the elevator the gate was up and that he was thereby misled into believing that the elevator was at the floor.

The complaint charged the defendant with negligence in thirteen particulars, six of which were sub-

mitted to the jury. The six attributed to the defendant negligence in the following particulars: Failure to provide

1. "a safe place for the operation of said elevator";

2. "lights or lighting in said elevator shaft or in the hallway leading thereto";

3. "interlocks on said gate, so that the said elevator could not be moved from said ground floor until the protection gate was in the proper place";

4. "interlocks on said gate so as to prevent said elevator from being moved away from said ground floor and at the same time allowing said gate to remain in a raised position";

5. "a hoistway or elevator shaft surrounding said elevator sufficient to prevent persons from falling down said elevator shaft";

6. "suitable or any locks on said gate so as to prevent the raising of said gate by hand, or otherwise, when said elevator is not at or on said ground floor."

All of the charges were denied in the answer. The latter, in addition to making the denials, attributed to the plaintiff contributory negligence. A trial by jury resulted in the entry of the judgment which we mentioned.

The defendant-appellant presents eight assignments of error. They urge that the Circuit Court erred when it

1. permitted "the witness Kelly to testify to a contract of maintenance and control [for the elevator] in direct violation of the terms of the lease";

2. refused "to grant defendant's motion for involuntary nonsuit";

3. refused "to grant defendant's motion for directed verdict";

122

4. refused "to give defendant's requested instruction to find their verdict for the defendant";

5. submitted to the jury the charges of negligence which we have epitomized;

6. refused to give to the jury "defendant's requested instructions II, III, IV, V and VI";

7. submitted to the jury "the question of the control of the elevator";

8. sustained "plaintiff's objection to defendant's question directed to witness Art Minert concerning the lights in elevator areaway."

We shall now consider the first assignment of error. It is based upon a series of rulings which were made during the course of the plaintiff's presentation of his case and which permitted him to prove that the defendant owed a duty to maintain the freight elevator in a safe condition. The defendant's objections to this testimony were based upon the terms of the written lease and the parol evidence rule. The defendant unifies the several rulings into a single contention which may be stated as follows: The freight elevator was demised, so the defendant argues, to the Garrett Appliance Company and, accordingly, after the demise the lessor owed no duty to repair or maintain the elevator. The following evidence, which developed facts bearing upon the execution of the lease, was presented before the last of the challenged rulings was made.

In 1933 W. E. and H. T. Miner conveyed to the State, as a gift, a building located in Eugene which was then known as the Miner Building. It is the structure in which the plaintiff was injured. The State entrusted the operation of the building to one C. L. Kelly, who is mentioned in this assignment of error. The first story of the building consists principally of storerooms. The upper seven stories are devoted to

offices. The building has one freight and two passenger elevators. The freight elevator is 30 feet from the rear or alley entrance of the building and serves only the first, second and basement floors. It has no operator apart from the person who for the time being uses it.

The plaintiff and one A. C. Stockstadt constitute a partnership under the name of Garrett Appliance Company which deals in electrical merchandise. October 24, 1944, the State, as lessor, and the partners, as lessees, executed a lease for a term of ten years which let to the partners the parts of the Miner Building described as follows:

> "Basement Space: Approximately one-half of the east two-thirds of the basement space, but leaving the oil fuel pump always clear and easily accessible for inspection and repair.

> "Ground Floor Space: Approximately the east thirty-two feet of the first or ground floor space."

The lease also contains these provisions:

> "The Lessees agree to allow the Lessors use of the freight elevator and basement space to bring in supplies to be stored in the basement."

> "It is mutually agreed that the front entrance is to be used in common with the other occupants of the ground floor space. Provided, however, that the Lessees are to have their own door. Also, it is agreed that the Lessor is to have the use of the West one-half of the space at the South entrance to the building."

The building is 60 feet wide and 160 feet long. The space demised, in whole or in part, to the Garrett Appliance Company is 32 feet wide. When the lease was executed a tenant, who was in the furniture business, occupied space in the basement and was virtually de-

pendent upon the freight elevator. Other tenants were located upon the second floor, which was also served by the freight elevator.

The lease, which, as both parties agree, contains no provision imposing upon either the duty to repair or maintain the elevator, is the basis of the defendant's contention that the elevator was demised to the Garrett Appliance Company.

July 1, 1947, the State sold the property to the defendant and assigned to it the Garrett lease. The defendant at once took possession of the property. Concurrently with the sale, Mr. Kelly resigned his position of building manager and was succeeded by one C. F. Wright.

In order to afford a better conception of the issue presented by this assignment of error, we now quote the questions which were propounded to Mr. Kelly and upon which this assignment of error is predicated. In some instances we also quote his answers.

"Q. And was the area in which the elevator was located, was that included in the area leased to the Garrett Appliance Company?
"A. I would say yes.
 \* \* \*
"Q. Mr. Kelly, who maintains the elevator?
"A. The Miner Building.
"Q. Did Mr. Garrett maintain it?
"A. No.
 \* \* \*
"Q. Was there any obligation of the Miner Building to maintain and repair the elevator?
 \* \* \*
"Q. Do you mean that the Miner Building had an agreement with the Otis Elevator Company?

\* \* \*

"Q. Who paid for the work?

"A. The Miner Building.

"Q. Did the Garrett Appliance Company pay for it?

"A. No.

\* \* \*

"THE COURT: As I understand you, you just took that job of keeping the elevator in repair."

To all of those questions the defendant interposed objections based upon this state's codification of the parol evidence rule: § 2-214, O. C. L. A. No objection was made on the ground that the interpretation of the lease by defendant's predecessor in title was immaterial.

In answer to the above questions, Mr. Kelly replied that the State, from the very outset, repaired and maintained all three elevators. He explained that employees of the building made minor repairs which did not require technical skill and that all others were made by the Otis Elevator Company. He was permitted to give the following explanation:

"The investment in elevators is rather extensive and I thought that because it was so large and we wanted the elevator preserved, the mechanism is delicate, that we didn't want to delegate to any tenant responsibility for keeping up these elevators and keeping them in repair. Then also we had a public liability policy with a company to protect us and that required that we assume the responsibility for keeping up all elevators. That is, we couldn't delegate that. They had to be kept up in accordance with the inspectors as well. But it is largely because of the large investment we had in the elevator that we thought it was necessary for us to retain the repairs, retain the responsibility of keeping the elevator in repair."

The rulings which received the testimony are attacked solely on the ground that they violated § 2-214, O. C. L. A., our codification of the parol evidence rule, which says:

> "When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except in the following cases:
> "(1) * * *
> "(2) * * * But this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in section 2-218, or to explain an ambiguity, intrinsic, or extrinsic, or * * *."

■■ The mere fact that a lease contains no covenant in regard to repairs is no indication that it is incomplete. We quote from 32 Am. Jur., Landlord and Tenant, p. 502, § 706:

> "* * * the mere fact that a lease contains no provision as to repairs does not make it incomplete on its face."

See, also, Tiffany, Landlord and Tenant, p. 583, McAdam on Landlord and Tenant, 5th ed., p. 85, and annotation 151 A. L. R. 808. Therefore, the absence of a stipulation in the lease upon the subject of repairs did not of itself indicate incompleteness and warrant the reception of evidence showing that prior to or concurrently with the execution of the lease the parties agreed upon the matter of repairs.

Let us assume for the moment that the lease is free from ambiguities and then, since it contains no covenant upon the subject of repairs, determine upon

whom, if anyone, the law cast the duty of maintaining the premises, specifically, the elevator, in safe repair.

From 51 C. J. S., Landlord and Tenant, p. 1071, § 366, we take the following:

"In the absence of statute or express covenant or stipulation, a lessor is not bound to make repairs to the leased property, or to keep it in repair, except to the extent to which he retains control."

The section adds:

"It has been held that the duty to keep a building, or part of it, in repair is coextensive with the control retained by the landlord, or by either the landlord or the tenant, and that lack of control involves relief, or freedom, from any obligation to repair."

Our decisions are in accord with the rule stated in the language just quoted, as will appear from a brief review of a few of the recent ones. In *Miles v. S. P. & S. Ry. Co.,* 176 Or. 118, 155 P. 2d 938; *Nash v. Goritson,* 174 Or. 368, 149 P. 2d 325, *Asheim v. Fahey,* 170 Or. 330, 133 P. 2d 246, and *Staples v. Senders,* 164 Or. 244, 96 P. 2d 215, 101 P. 2d 232, the lessors had parted completely with control over the part of the premises which, according to the plaintiff, had become negligently defective. In each case this court held that the lessor was not liable. In *Pritchard v. Terrill,* decided October 3, 1950, 222 P. 2d 652. *Lyons v. Lich,* 145 Or. 606, 28 P. 2d 872, *Massor v. Yates,* 137 Or. 569, 3 P. 2d 784, and *Longbotham v. Takeoka,* 115 Or. 608, 239 P. 105, the landlord had retained at least partial control over the part of the premises which, upon becoming defective, caused injury. In all instances, judgment for the plaintiff was affirmed. In the case last cited, the decision pointed out:

"The tenant cannot be held to repair that over which he has no authority. Responsibility whether of the landlord or of the tenant follows and is measured by the control lodged in one or the other."

From the foregoing we see that if the lease, from which we have quoted, demised the elevator to the lessee, the owner was not bound to repair and maintain it. The question now presents itself: Did the lease demise the elevator to the Garrett Appliance Company? The only possible bases for an inference that the elevator was leased to the Garrett Appliance Company are the following: (1) The lease mentioned the freight elevator; and (2) the freight elevator passed through and touched upon parts of the building leased, in whole or in part, to the Garrett Appliance Company. The words, "The lessees agree to allow the lessor use of the freight elevator," which are the lease's sole mention of the elevator, may possibly mean nothing more than that the lessees should not obstruct the lessor's access to the elevator. At any rate, the words just quoted are not words of demise. Although the shaft of the elevator lay, in part, within areas leased to the tenant, it does not necessarily follow that the entire elevator was demised to the tenant.

We assume that it is within the range of judicial knowledge that an elevator consists of much more than the eye sees as the platform or cage moves up and down in the shaft. The platform assuredly is an important part of an elevator, as is also the shaft for its entire length. But no less important are other parts of the elevator, such as the switch panels, the drums over which cables operate, the hoisting machinery which propels the cables, and the controls which regulate operation. So far as the lease discloses, important parts

of the elevator may have been outside the leased premises. For instance, the shaft may have extended beyond the first story of the building. It will be recalled that nothing was leased to the plaintiff above the first floor. It is a matter of common observation that over the shaft are drums over which cables operate. They are indispensable and require regular oiling. Again, although the lease demised to the tenant "approximately one-half of the East two-thirds of the basement space," it may be that the hoisting apparatus, including the motor, if it was in the basement, was not in the part which was leased to the tenant. In short, there is nothing in the lease itself which indicates that the tenant had access to the motors, drums, and so forth, so that it could make necessary inspections and repairs.

If, in our consideration of this assignment of error, we cannot scrutinize anything except the lease, we are bound to hold that it does not demise the elevator to the Garrett Appliance Company. But the parol evidence rule authorizes courts in their application of it to consider "evidence of the circumstances under which the agreement was made." Those circumstances, as we have already noticed, show that (1) the freight elevator served the basement, first and second floors of an eight-story building; (2) the elevator served other tenants of the building in addition to the Garrett Appliance Company; (3) the basement end of the shaft was in an area described in the lease but subject, as stated in the latter, to the lessor's right to pass over the area for the purpose of bringing in supplies; and (4) the elevator passed through the first floor in an area which the lease subjected, in part, to the lessor's "use". This ancillary evidence, which shows the circumstances attending the execution of the lease, wholly

fails to mention the nature, kind or location of the mechanical parts which comprised the elevator. Not one syllable of evidence indicates where the motor was located, and we do not know where the other parts, such as controls, drums and switches could be found. The record contains no plat of the basement, and we have no knowledge as to the place in the basement where any part of the hoisting apparatus was located—if it was in the basement at all. Since the overhead drums over which the cables pass are above the elevator shaft, and since the Garrett Appliance Company had no space on the second floor of the building, the drums, manifestly, were outside of its reach and, therefore, it could neither oil them nor repair them without committing acts of trespass. It is true that Mr. Kelly, in words which we quoted from him, said that the elevator was in the area leased to the Garrett Appliance Company. The complaint contains a similar statement. We think it is plain, however, that in each instance the term "the elevator" was used as the equivalent of the elevator shaft.

 Without setting forth further analysis, we express the conclusion that the trier of the facts was not bound to hold that the lease demised the elevator to the Garrett Appliance Company. The most that can be said in favor of this assignment of error is that the part of the lease concerning the elevator is ambiguous. Ambiguous language is not protected by the parol evidence rule; to the contrary, it invites the reception of evidence to clarify the ambiguity. We think that no error was committed when the objections to Mr. Kelly's testimony were overruled: *Wilkens v. Western States Grocery Company,* 167 Or. 103, 114 P. 2d 542. We realize that in treating this assignment of error in the above manner

we took a view of the situation different from the one that was adopted by the trial judge. The latter overruled the objections which we have been considering under a belief that when the lessor repaired the elevator it did so gratuitously, and that one who makes gratuitous repairs must exercise due care. Even though that was the theory of the trial court, nevertheless, when the defendant submitted the assignment of error now under review, it assumed the burden of showing that the elevator was, in fact, leased to the lessee. Error is never presumed, and therefore this assignment of error cannot be sustained, in the absence of proof showing that the freight elevator was, in fact, demised to the Garrett Appliance Company. We think that the burden was not discharged and that this assignment of error lacks merit.

We shall now consider the eighth assignment of error. Mr. Minert, mentioned in it, as a witness for the plaintiff, testified that on several occasions ''the tripping mechanism'' which constitute a part of the elevator and which was intended to regulate automatically the ascent and descent of the door, failed to function, with the result that when the elevator was absent from the first floor the door sometimes remained at the ceiling. He also testified that whenever he noticed that condition he complained to one Walter Bosen, an employee of the defendant in immediate charge of the elevator. That was the extent of his direct testimony. Upon cross-examination, defendant's counsel asked Mr. Minert the question which underlies this assignment of error: ''Where are the lights?'' Section 4-708, O. C. L. A., says:

''The adverse party may cross-examine the witness as to any matter stated in his direct examination, or connected therewith * * *.''

The matter about the lights was not connected with any testimony given by the witness upon direct examination. As has been many times ruled, the extent of cross-examination rests largely in the discretion of the trial judge. This discretionary power was not abused when the challenged ruling was made. We dismiss the eighth assignment of error as lacking in merit.

11. We believe that the second, third and fourth assignments of error can conveniently be considered together. In ruling upon motions for nonsuit and directed verdict, the court must accept the version of the evidence most favorable to the party against whom the motion was made. In presenting these assignments of error, the defendant virtually omitted mention of that part of the evidence which concerns the purported negligent condition of the elevator. For present purposes it concedes that the record is capable of supporting a finding that the elevator was not in a reasonably safe condition when the plaintiff met with his mishap. The defendant's principal argument in behalf of these assignments of error is that it owed no duty to maintain the elevator in safe condition. In ruling upon the first assignment of error, we held that the lease did not cast upon the tenant the duty to make repairs to the elevator. Substantial evidence indicates: (1) From the very outset the owner repaired the elevator whenever it needed repair. (2) The Garrett Appliance Company never made any repairs to the elevator and was never requested to make any. (3) The owner paid for the power which propelled and illuminated the elevator. (4) The elevator was available to all tenants and to all draymen who brought to the structure desks and supplies and removed from it similar items and waste material. (5) When an employee of the Garrett Ap-

pliance Company found a defect in the elevator, he reported it to the building's manager who, in turn, saw to it that the defect was remedied. (6) Permits for the operation of the elevator, issued by the Commissioner of Labor, pursuant to Oregon Laws, 1943, Chap. 125, § 2, were delivered to the owner. (7) The owner contracted with the Otis Elevator Company for regular inspection and repair of the elevator and paid the entire cost until October, 1945. (8) In October, 1945, Mr. Kelly told the plaintiff that the Otis Elevator Company had increased its charge for the service just mentioned and inquired whether the Garrett Appliance Company was willing to pay one-half, that is, $6.50, of the monthly charge. The Garrett Appliance Company agreed to pay the requested amount as a voluntary increase in its rental. (9) When the defendant purchased the building, its manager, Mr. Wright, inquired of the plaintiff for an explanation of the additional monthly remittance of $6.50 and was thereupon acquainted with the facts which we have just recounted. (10) The Garrett Appliance Company was not a party to the contract for the inspection and repair of the elevator. The contracting parties were the owners of the building and the Otis Elevator Company. (11) When the inspector for the Otis Elevator Company made his regular inspections of the elevator he tendered for signature a report. It was always the building manager or one of his assistants who signed the report.

We believe that the evidence just summarized discloses a practical construction of the lease made by the parties who were bound by it. The parties to an instrument are in a superior position to know its purpose, and their practical construction is a preferred

index to its meaning: *Miles v. S. P. & S. Ry. Co.,* supra, and *Wilkens v. Western States Grocery Co.,* supra. The construction of the instrument manifested in the manner just indicated could readily support a finding by the jury that the duty of maintaining the elevator in a safe condition of repair was upon the defendant.

■ As we have said, substantial evidence indicates that the defendant failed to maintain the elevator in a safe condition. We will now ascertain whether the evidence indicates that, as a matter of law, the plaintiff was guilty of contributory negligence.

December 10, 1948, at about 9:00 p. m., the plaintiff, accompanied by one of his employees, walked from the store part of the leased quarters to a set of swinging doors, which the plaintiff thereupon opened, and which was close to the freight elevator shaft. Their purpose was to enter the elevator and go to the basement. When the plaintiff had opened the doors he observed that the space—a hallway—immediately in front of him was dark. Normally, it was illuminated by an electric light in the ceiling. A brief description of the hallway, which some of the witnesses termed a common passageway, will be helpful. It was 30 feet long and six or seven feet wide. At its one end, which was to the left of the plaintiff as he stood in the doors, was the alley entrance of the building. At the other end of the hallway, about four feet to the plaintiff's right, was the freight elevator shaft. This hallway lay within the area mentioned in the lease, but over it the lessor reserved a right of passage. At the freight elevator end of this hallway there was a slight jog which connected with a longer hallway that ran to the front of the building. The tenants of the structure and tradesmen who employed the alley entrance to the

building used this passageway. When the plaintiff had opened the swinging doors and had observed the darkness, the employee who accompanied him said, "Oh, oh, where is the light?" and stepped back a foot or so to fasten the doors so that more light would come through from the illuminated area to his rear. The plaintiff swore that enough light filtered through the open doors so that he could see that the elevator door was open; that is, that it was not at the floor. From that fact he inferred that the elevator was at the floor and advanced for the purpose of turning on a light switch in the elevator. The plaintiff had used the elevator constantly and was familiar with it. He had never known an instance in which the door failed to work automatically except upon one occasion about eight months prior to his injury. Upon that single occasion he at once complained to the building manager who promptly had the needed repairs made. Although the plaintiff had seen by the filtered light that the elevator door was open, the elevator, as a matter of fact, was at the second floor. The plaintiff's effort to reach the switch precipitated him into the open shaft and he fell to the bottom of the pit.

As we have said, an electric light bulb was attached to the ceiling of the hallway. It was not operated by a switch and was attached to the defendant's meter. The defendant paid for the current which illuminated it. It was generally burning, and, according to the defendant's building engineer, it was supposed to burn constantly. Prior to the plaintiff's injury, someone had turned the bulb in its socket to the point where it was disconnected from the current.

The sole issue presented by the defendant's contention that the plaintiff's step into the shaft rendered him

guilty of contributory negligence is this: Did his conduct amount to contributory negligence as a matter of law?

■ We are required to accept as truthful the plaintiff's testimony that sufficient light shone through the open swinging doors so that he could see that the elevator door was not at the floor; that is, that it was open. We are also required to accept as truthful his statement that he had never before seen the door open when the elevator cage was not at the first floor except upon one previous occasion, and that immediately following his complaint to the building manager the door's automatic mechanism was repaired. Upon the occasion of his injury the plaintiff was required to act in faint light due to conditions which the jury had a right to charge to the defendant. If the door was open, the plaintiff could infer a representation upon the defendant's part that the elevator platform was beyond the threshold for him to step upon. In acting upon that representation, the plaintiff was not necessarily guilty of contributory negligence: *Helzer v. Wax*, 127 Or. 427, 272 P. 556; *Whisler v. United States National Bank of Portland*, 160 Or. 10, 82 P. 2d 1079; 18 Am. Jur., Elevators and Escalators, p. 564, § 80; *McKenna v. Grundbaum*, 33 Ida. 46, 190 P. 919; *Moohr v. Victory Investment Co.*, 144 Wash. 387, 258 P. 43; *Sheridan v. Aetna Casualty & Surety Co.*, 3 Wash. 2d 423, 100 P. 2d 1024; *Steger v. Immen*, 157 Mich. 494, 122 N. W. 104, 24 L. R. A. (N. S.) 246; *Shoninger v. Mann*, 219 Ill. 242, 72 N. E. 354, 3 L. R. A. (N. S.) 1097; *Pauckner v. Wakem*, 231 Ill. 276, 83 N. E. 202, 14 L. R. A. (N. S.) 1118; *Aiken v. Sidney Steel Scraper Co.*, 197 Mo. App. 673, 198 S. W. 1139. We find no merit in the second, third and fourth assignments of error.

The fifth assignment of error challenges an instruction given to the jury which submitted to it the specifications of negligence which we detailed in a preceding paragraph. The defendant's brief says: "We cannot see how, by the loosest construction of the defendant's duties, that it could be said that the defendant had anything to do with the room facing the entrance of the elevator." The room to which the quoted words refer was the area termed by us a hallway. We have described it. Continuing, the defendant's brief says: "By what stretch of the imagination can it be said that it was the duty of the defendant to keep that room lighted?" The defendant's exception to this instruction was the following:

"The defendant excepts to the submission to the jury of the allegations of negligence contained in plaintiff's amended complaint, being the allegations having to do with the safe operation of the elevator, of maintaining adequate light, * * * for the reason that the allegations of negligence all ask for affirmative action and only say that the defendant failed to do certain things and that it would not be the duty of the defendant under his gratuitous undertaking to perform acts of nonfeasance."

*Smith v. Pacific Northwest Public Service Co.,* 146 Or. 422, 29 P. 2d 819, points out:

"When a party excepts to the giving by the court of any particular instruction, then the excepting party should point out the vice of the instruction."

We do not think that the exception discloses any vice in the instruction that was actually given. From the facts which we have delineated, we believe that the jury had a sufficient basis for believing that the parties had construed the lease as meaning that the defendant should keep the hallway lighted.

■ It may be true, as the defendant argues, that one who undertakes gratuitously to make repairs is not liable for mere nonfeasance (see 32 Am. Jur., Landlord and Tenant, 548, § 679), and that the instructions complained of were, therefore, inconsistent with the theory of liability adopted by the trial judge. That theory, however, was more favorable to the defendant than it was entitled to. Under what we have held to be the correct basis of liability in this case, the court was right in submitting to the jury the charges of negligence in question, and, notwithstanding the inconsistency, we are of the opinion that no prejudice resulted to the defendant. We dismiss this assignment of error as lacking in merit.

The sixth assignment of error is based upon the following instruction, requested by the defendant but refused by the trial judge:

"* * * I instruct you that there has been offered in evidence the lease between the plaintiff and defendant, and according to its terms, all of the area immediately in front of and leading into the elevator and elevator shaft, and the elevator and elevator shaft were under the dominion and in the control of the plaintiff, subject to the use of the defendant to take supplies to the basement. The lease by its terms makes no provision for repairs, and I instruct you that you shall disregard any evidence of alleged subsequent agreements with respect to repairs, and I further instruct you that it was not the duty of the defendant to make repairs to the elevator. * * *"

■ From our analysis of the lease and the circumstances attendant upon its execution, it necessarily follows that this instruction was properly declined. We dismiss this assignment of error as lacking in merit.

The seventh assignment of error attacks a part of the instructions given to the jury which, as printed in the defendant's brief, constitute six and one-third pages. In support of this assignment of error, defendant's brief argues:

"We merely reiterate that the control or operation of the elevator could not under any circumstances be made the basis of a charge of negligence against the defendant unless the defendant did some affirmative act in the matter of the operation that was negligent in itself. * * * The control of the elevator was determined in the written lease which was assigned to this defendant."

The instruction challenged by this assignment of error includes many paragraphs to which no exceptions were saved at the time of the trial. Further, we believe that the foregoing argument discloses no infirmity in the instruction. We dismiss this assignment of error as lacking in merit.

The above disposes of all of the assignments of error. Although we have not reviewed in this decision all of the authorities cited in appellant's brief, all of them received our careful consideration.

The judgment of the Circuit Court is affirmed.