Argued September 8, reversed October 5, 1960

# BICKHAM *v.* REYNOLDS ET UX
### 355 P. 2d 756

*Edwin J. Peterson* and *Lamar Tooze,* Portland, argued the cause for appellants. With Edwin J. Peterson on the briefs were Tooze, Kerr, Tooze & Morrell, Portland.

*Charles Paulson,* Portland, argued the cause for respondent. With him on the brief were Peterson & Lent, Portland.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and King, Justices.

KING, J. (Pro Tempore)

This action was brought by Constance Bickham, the plaintiff, a tenant in the apartment house owned by the defendants, asking damages for injuries sustained as the result of a fall on the back stairway of the leased premises. The plaintiff alleges that the defendants were negligent in failing to repair the stairway.

The defendants appeal from a jury verdict and judgment in favor of the plaintiff in the amount of $5,000.

At the close of plaintiff's case the defendants

moved for a nonsuit, and at the conclusion of the testimony, moved for a directed verdict. Both motions were denied.

One of the questions raised in both these motions was whether there was any enforceable contract binding on the defendants to repair the back stairs.

■ In determining these motions the facts, of course, must be viewed in a light most favorable to the plaintiff.

The defendants were the owners of a four-apartment, two-story house, maintained for rental purposes.

There were two apartments on the lower or first floor and two on the second floor of the building. One was called the back apartment and one, the front apartment on each floor.

On or about June 19, 1958, the plaintiff and her husband contacted the defendants and arranged to rent the back, upstairs furnished apartment on a month-to-month basis, at an agreed rental of $45 per month, payable in advance. They paid the first month's rental and moved into the apartment on June 20, 1958.

There were two entrances to the apartment: the main or front entrance and stairs, which were shared with other tenants, narrow back stairs which extended 9 or 10 stair steps from the lower floor level to a landing or platform, and then another flight from that landing on up to a closed-in back porch and connected only to the plaintiff's apartment.

These back stairs were used at least two or three times a week by the plaintiff to get from her apartment to the garbage cans, the laundry area, the clothes lines, and for other purposes.

Approximately a month after the plaintiff and her family moved into the apartment and started using

the back stairs, she noticed one of the steps was so loose that it would slide out of place. Both the plaintiff and her husband testified that one or the other of them notified each of the defendants several times and that they replied, "It will be fixed." Plaintiff's husband also testified that he told Mr. Reynolds that if he would get him some spikes, he would fix the step by nailing it down.

The step was not fixed or nailed down either by the defendants or by the plaintiff's husband. The plaintiff continued to use these back stairs, either by stepping carefully on the loose board or by stepping entirely over it.

Early in the morning of September 9, 1958, the plaintiff claims she was descending the stairs, carrying their dog in her right hand and arm and holding onto the railing with her left hand. She stepped on the loose board with her left foot, was thrown to the bottom of the stairs, and received the injuries complained of.

She called to her husband, who came down and helped her back to the apartment. He claimed that the loose board was entirely out of place and in the position as shown in a photograph received in evidence, which will be mentioned later.

The complaint does not allege and the proof most favorable to the plaintiff does not show that there was any agreement or contract at the time of the original leasing that the defendants should keep the leased premises in repair. Likewise, there is no allegation and no evidence that the defendants undertook to make any repairs and made them negligently.

We then come to the next question, and the vital one: Was there a new, valid and enforceable agreement or contract made by the landlords to repair?

The amended complaint in this case contained two counts. The first count alleged in effect that the defendants retained control over the back stairs. This count was removed from the jury's consideration by the trial judge for lack of evidence to support it. We agree with that ruling of the court, and it has not been raised by the plaintiff in this court.

The second count of the amended complaint alleges as follows:

"* * * * *

### "III

"That prior to said fall and injuries, plaintiff and others complained to the defendants, and each of them, of the defective condition of said stairway and the defendants, and each of them, agreed and represented that they would make the necessary repairs; that plaintiff relied upon said promise and plaintiff was injured by the negligence of the defendants, and each of them, as hereinafter alleged, while using said stairway.

### "IV

"That at said time and place, the defendants, and each of them, were reckless, careless and negligent in one or more of the following particulars:

"1. In permitting the stairway to remain in a defective and dangerous condition after having notice of said condition and after promising and representing that the same would be repaired.

"2. In failing to warn or give notice to the plaintiff that they had not repaired the defective and dangerous condition of said stairway after promising and representing to the plaintiff that the repairs would be made.

"* * * * *"

The defendants by their answer to the second count of the amended complaint specifically deny the

allegations of paragraphs III and IV above set out, in addition to alleging affirmative matters which will not be set forth here.

■ While the wording of the quoted paragraphs of the complaint is not too precise in all details, we will treat it as alleging an enforceable contract to repair made after the original rental or leasing, based on adequate consideration, and the answer as a denial thereof.

51 CJS 1071, Landlord and Tenant § 366, says:

"In the absence of statute or express covenant or stipulation, a lessor is not bound to make repairs to the leased property, or to keep it in repair, except to the extent to which he retains control."

This rule, where the lessor had parted with control, has been followed in Oregon in a number of cases, including: *Staples v. Senders,* 164 Or 244, 96 P2d 215, 101 P2d 232; *Asheim v. Fahey et al.,* 170 Or 330, 133 P2d 246; *Nash v. Goritson,* 174 Or 368, 149 P2d 325; *Miles v. S., P. & S. Ry. Co.,* 176 Or 118, 155 P2d 938; *Garrett v. Eugene Medical Center,* 190 Or 117, 224 P2d 563.

In this case we have no proof that the owners retained any control over the back stairs, so we are faced with the direct question of whether the landlord's alleged statement: "It will be fixed" on the notification of the defect by the plaintiff, was sufficient to constitute a new, binding agreement or contract to repair.

One of the earliest Oregon cases, *Kahn v. Love,* 3 Or 206, says:

"A tenant has no remedy against a landlord for suffering premises to be out of repair, unless the

landlord has agreed to keep it in repair. Unless there be an express agreement to that effect, the tenant, whether for life, for years, or at will, cannot compel him to repair. (*Howard v. Doolittle,* 3 Duer, 464)."

In *Asheim v. Fahey et al.,* supra, this court said:

"In the absence of a special agreement to make repairs upon the demised premises, a landlord is under no duty to do so. 32 Am. Jur., Landlord and Tenant, section 705. He may, of course, by the terms of his lease, covenant to make repairs, but the law in that connection is that he must have timely notice of the need for repairs before he is obligated to make them. If, after such notice and a reasonable opportunity to make the repairs, the landlord fails to do so, and damage to the tenant or his invitees results, the landlord may be held liable."

*Ashmun v. Nichols,* 92 Or 223, 178 P 234, 180 P 510; *Teel v. Steinbach Estate et al.,* 135 Or 501, 296 P 1069.

This court in *Ashmun v. Nichols,* supra, affirmed a verdict for the plaintiff in a case somewhat similar to this case, but differing in some vital respects. In that case the plaintiff fell on defective basement stairs and was injured. She knew of the defect in the stairs and continued to make necessary use of them in a careful manner. The plaintiff had notified the defendant of the defect. The defendant had promised to repair and had actually placed the lumber there, and it remained unused for five days. It was on the fifth day that the step broke, causing plaintiff to fall.

An important difference between that case and the one at bar appears at the very start of Justice JOHNS' decision when he says:

"It appears that at the time of the leasing the

building in question was very *old, out of repair and in a dilapidated condition*; that it was only a matter of a short time until it would have to be torn down; that it was necessary that certain improvements *should be made before it would be a fit or suitable place for habitation*; that certain repairs were then made and during the three-year period of the leasing the landlord continued to make minor and inexpensive repairs, and that the agreed rental was paid." (Emphasis supplied.)

The above statement would indicate that the court's decision was based upon plaintiff's claim that defendant promised and agreed to make repairs and to keep the premises in good condition at the time of the original leasing and that this was borne out by the fact that some repairs had been made during the leasing.

On rehearing of *Ashmun v. Nichols,* supra, the court said:

"In this case we think it clearly appears that there was evidence from which the jury might find that there was a general contract, at the time plaintiff went into the building, that defendant would make such repairs from time to time as were necessary * * *."

The Ashmun case, while apparently decided on the basis of the original contract primarily, does indicate that the court felt a special contract or agreement as cited in *Asheim v. Fahey et al.,* supra, would be binding on the landlord to make repairs on the demised premises. We believe that is the general rule as well as the rule in Oregon.

■ In this case we have the testimony of Mrs. Bickham and her husband that the defendants said: "It will be fixed." There was no allegation and no proof of a threat to move unless the step was fixed. The

consideration, if any, for the new contract to repair must be inferred from the statements and conduct of the parties. There was no direct testimony of any consideration for the new promise if it were made. A landlord's new promise to repair, made after the original leasing, must be supported by consideration; otherwise, it would be merely a *nudum pactum*. *Lusco v. Jackson*, 27 Ala App 531, 175 So 566; *Pena v. Stewart*, 78 Ariz 272, 278 P2d 892; *Margolen v. de Haan*, 226 Ill App 110; *Bailey v. First Realty Co.*, 305 Mass 306, 25 NE2d 712; *Lopez v. Gukenback*, 391 Pa 359, 137 A2d 771.

■ The question of whether there was consideration for a new agreement to repair by the landlord, and the question of intent and meeting of minds of the parties at that time, has been a vexing problem for the courts. A great many courts have used the "threat to vacate" on the part of the tenant as a manifestation of intent to make the landlord's promise to repair a binding contract; that the resulting benefit to the landlord for the continued leasing by the tenant is consideration or evidence of consideration. *Hart v. Coleman*, 201 Ala 345, 78 So 201; *Papallo v. Meriden Savings Bank*, 128 Conn 563, 24 A2d 472; *Thompson v. Clemens*, 96 Md 196, 53 A 919; *Ehinger v. Bahl*, 208 Pa 250, 57 A 572.

The case of *McKenzie v. Egge*, 207 Md 1, 113 A2d 95, and relied upon strongly by the plaintiff, went even further than the above cited "threat to vacate" cases and assumed that the promise to repair induced the tenant to continue in occupancy and that it was consideration for and her acceptance of the landlord's offer to repair.

The weight of authority is strongly against the holding of the McKenzie case. While that case recog-

nizes the general rule that there must be a new agreement to repair, its departure from the majority of the cases is on the amount and kind of proof required. It seems to relax the rules of amount of proof required to establish agreements, contracts, and consideration therefor to an undue extent.

The proof submitted in the case at bar did not even go to the extent as that submitted in *McKenzie v. Egge,* supra. There the plaintiff had called the dangerous condition of the porch to defendant's attention the next day after leasing the premises, and he promised to repair it. Several other times on rental payment dates, as payments were made, the promise was renewed. He was right there every day where he could observe the situation and the bad condition of the whole porch.

In the case at bar its was merely a loose board on the step, not a general weakening of the stairs, and was first mentioned to the defendants a month or more after the original leasing. There was no threat to vacate and no evidence that the plaintiff, in using the stairs, believed the defendants had repaired the steps or that reliance upon their promise was the proximate cause of her fall. The evidence even showed that after the first payment there was always some delinquency in the rental payments and that the plaintiff was a short time later evicted for nonpayment of rental. There was not the same reason for the defendants to desire the leasing to continue as shown in *McKenzie v. Egge,* supra.

The proof in this case was not sufficient to be submitted to the jury on the question of whether there was a new and binding contract to repair by the landlords. The alleged statement, "It will be fixed," was nothing more than a gratuitous statement and was not

supported by any evidence to prove consideration or a meeting of minds on a new contract to repair.

The motion for a directed verdict should have been granted.

It is not necessary to decide the other assignments of error; however, we will state briefly that No. I, regarding the reception of photographs, is denied.

Assignments Nos. IV and V, regarding the subsequent repairs and failure to take them from the jury, are well taken and constituted reversible error. In view of our holding on the motion for directed verdict, we will not elaborate on this error.

Reversed.