Argued December 19, 1974, affirmed in part; reversed in part
and remanded February 10, reconsideration (appellant) denied
March 12, (defendant County) March 26, petition for
review denied May 13, 1975

BAKER, *Appellant, v.* STATE BOARD OF
HIGHER EDUCATION ET AL (No. 72 4580),
*Respondents.*

531 P2d 716

*Merrill G. Emerick,* Portland, argued the cause for appellant. With him on the briefs were Phillips, Coughlin, Buell, Stoloff & Black, Portland.

*Robert E. Franz, Jr.,* Eugene, argued the cause for respondent State Board of Higher Education. On the brief were Jaqua & Wheatley and John E. Jacqua, Eugene.

*Richard Bryson,* Eugene, argued the cause for respondent Lane County. With him on the brief were Calkins & Calkins and Bryson & Robert, Eugene.

Before Schwab, Chief Judge, and Langtry and Foley, Judges.

LANGTRY, J.

Plaintiff seeks to recover damages for a permanent injury suffered while attending an "Indian Powwow" conducted within the Lane County fairgrounds arena under the authority and supervision of defendant State Board of Higher Education (hereafter "Board") pursuant to a lease agreement with the

Lane County Fair Board, an agency of defendant Lane County (hereafter "County").

Concluding that plaintiff's fourth amended complaint (1) failed to state facts amounting to a breach of duty owed by defendant Board, and (2) charged defendant County with acts and omissions protected by the doctrine of governmental immunity, the circuit court sustained demurrers filed by both defendants. Plaintiff declined to plead further and judgment was entered in favor of the defendants. Plaintiff appeals, contending that the demurrers were improperly sustained.[1]

The question before us is whether plaintiff's

---

[1] Defendant County has also suggested in its brief to this court that plaintiff's failure to allege performance of the jurisdictional prerequisite found in ORS 30.275 ought to render his complaint fatally defective.

Those seeking to maintain tort actions against "public bodies" —the definition of which encompasses defendant County (ORS 30.310)—must do so in strict compliance with the prescriptions of ORS 30.260 to 30.300 (ORS 30.320). ORS 30.275 provides in relevant part:

"(1) Every person who claims damages from a public body for or on account of any loss or injury within the scope of ORS 30.260 to 30.300 shall cause to be presented to the public body within 180 days after the alleged loss or injury a written notice stating the time, place and circumstances thereof, and the amount of compensation or other relief demanded * * *.

"* * * * *.

"(3) *No action shall be maintained unless such notice has been given* and unless the action is commenced within two years after the date of such accident or occurrence. The time for giving such notice does not include the time, not exceeding 90 days, during which the person injured is unable to give the notice because of the injury or because of minority, incompetency or other incapacity." (Emphasis supplied.)

Defendants rely on Fry v. Willamalane Park & Rec. Dist., 4 Or App 575, 481 P2d 648 (1971). In that case this court concluded that pursuant to the terms of this statute the notification of a

fourth amended complaint charged either of the defendants with acts or omissions, unprotected by the doctrine of governmental immunity, which amount to the breach of a duty owed the plaintiff.

■ When a demurrer to a pleading is sustained and the party receiving the adverse decision elects not to plead further, it will be presumed that the party has stated his case as strongly as the facts will permit and the pleading will be construed most strongly

public body is a condition precedent to the maintenance of any tort action.

In *Fry* the giving of the notice required by the statute was not alleged in the complaint, but the complaint did contain two paragraphs of affirmative allegations of the plaintiff's notice to Willamalane's insurance carrier, which he claimed fulfilled the notice requirement. The matter was determined on demurrer, where the court apparently assumed plaintiff had pleaded notice as strongly as he could, for he refused to plead further. One point of the opinion in *Fry* was that knowledge imparted to the carrier was not a substitute for the notice to Willamalane required by the statute.

*Fry* did not hold that notice under ORS 30.275 must be pleaded in the complaint. It simply held that the notice pleaded therein did not fulfill the statutory requirement. In one of the cases cited therein, Newlun v. City of Portland, 248 Or 291, 433 P2d 816 (1967), the required notice or lack thereof was not pleaded in the complaint, but, rather, it was pleaded as an affirmative defense in the city's answer to which the plaintiff demurred. The matter was concluded on that demurrer. Sprague v. Astoria, 100 Or 298, 195 P 789 (1921), cited in *Fry*, is not in point as to pleading of notice because the notice was alleged in the complaint, a demurrer thereto was overruled, and it was only after evidence had been taken on the matter at trial that the ultimate ruling on sufficiency of the notice was made.

We conclude that plaintiff should be allowed to plead and prove the required notice if he can. If it is pleaded in a complaint, its sufficiency may be tested by demurrer to the complaint. If its absence is pleaded as an affirmative defense, it may be tested by a demurrer by plaintiff, as it was in *Newlun*. And there may be situations where the sufficiency of notice may only be determined after plaintiff files a reply or evidence is taken.

against him. *Smith v. Cooper,* 256 Or 485, 475 P2d 78, 45 ALR3d 857 (1970); *Citizens Val. Bk. v. Prahl/ Benton Co.,* 11 Or App 97, 502 P2d 284 (1972).

Plaintiff alleged in his fourth amended complaint that defendant Board leased the arena from the County in order to provide a facility for an "Indian Powwow" to which the public was invited; that "the fairgrounds immediately adjacent to and surrounding the arena are owned and controlled by defendant" County and are used for the boarding of horses, stalls being rented to private parties who are provided with rules for the use of the premises; that "while attending" the "Powwow" sponsored by defendant Board plaintiff was attracted to an unattended horse "kept on said fairgrounds," which was "* * * tied by a rope to a fence and plaintiff took hold of the rope and his fingers were pulled against the fence by the horse causing the middle three fingers of plaintiff's left hand to be severed."

Plaintiff charged defendant Board with negligence in (1) selecting an unsafe place for the powwow, (2) failing to inspect or require an inspection to make certain that horses kept on the fairgrounds were properly supervised and that there were rules prohibiting the leaving of horses unattended, and (3) failing to place or require warning signs, guards, fences or ropes to separate the area of ingress and egress to the arena from the area where the horses were located.

> "It is well established that actionable negligence arises only from the breach of a duty owed by one person to another, and that to state a cause of action for negligence the complaint must state the duty imposed or facts from which the law will imply a duty * * *.

"* * * [T]he question presented is whether the allegations of negligence stated in plaintiff's complaint, when considered in the light of his allegations as to circumstances attending his injury, disclose a breach of defendant's duty to [plaintiff]." *Klerk v. Tektronix, Inc.,* 244 Or 10, 13, 415 P2d 510 (1966).

■■ A lessee has a responsibility—i.e., duty—to take reasonable steps to insure the safety of those coming within areas *in his possession or under his control.* In attempting to determine the allocation of liability between a lessee and a landlord for the damages suffered by a third party, courts have consistently regarded the issue of "control" as determinative. *See Bickham v. Reynolds et ux,* 224 Or 194, 355 P2d 756 (1960); *Wilkens v. West. States Groc. Co.,* 167 Or 103, 114 P2d 542 (1941); *Staples v. Senders,* 164 Or 244, 96 P2d 215, 101 P2d 232 (1940); *Whisler v. U. S. Nat. Bank of Portland,* 160 Or 10, 82 P2d 1079 (1938). Plaintiff has cited *Chance v. Ringling Bros.,* 257 Or 319, 478 P2d 613 (1970), in support of the argument that the complaint sufficiently charged a duty on the part of the Board. Although the court there did decide that Ringling Brothers owed a duty to the plaintiff and other business invitees, the evidence had clearly shown that:

"Ringling Bros. * * * *was the occupier or possessor of the premises where the accident occurred or where signs or barricades would be placed.* * * * As such it was the separate duty of Ringling Bros. to exercise reasonable care for the safety of its customers." (Emphasis supplied.) 257 Or at 327-28.

Nothing in plaintiff's complaint here suggests that his injury occurred either within the arena itself or its areas of ingress and egress—the only locations alleged to be within the possession and control of defendant Board. We may presume that the injury was the re-

sult of an encounter with a horse found somewhere upon, at best, the immediately adjacent fairgrounds owned and controlled by defendant County.

■ As lessee only of the fairgrounds arena building the Board clearly had no obligation to supervise or control horses boarded on the adjacent fairgrounds; while a duty to take reasonable steps designed to protect invitees passing through the area of ingress and egress to the arena might well be imposed upon a tenant in the position of the Board, the fourth amended complaint at bar does not indicate that any such duty was breached to the injury of plaintiff.

■■ Assuming without deciding that the Board did have a duty to select a "safe place" in which to hold the powwow, the act of selecting a site is obviously the exercise of a "discretionary function" for which no liability may attach.[2] The selection of an "appropriate" site for a public gathering—much like the planning and designing of highways—is generally the kind of decision requiring the exercise of a technical judgment which neither a judge nor a jury is capable of evaluating in terms of the concept of "negligent" or unreasonable behavior. *Smith v. Cooper,* supra; *Lanning v. State Hwy. Comm.,* 15 Or App 310, 515 P2d 1355

---

[2] ORS 30.265 provides in relevant part:

"(1) Subject to the limitations of ORS 30.260 to 30.300, every public body is liable for its torts and those of its officers, employes and agents acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function.

"(2) Every public body is immune from liability for:

"* * * * *.

"(d) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused.

"* * * * *."

(1973). The Board concedes that once the fairgrounds arena had been chosen as the site for the proposed "Powwow" it had the duty to maintain it in a safe condition and would have been liable for any injuries resulting from a defect in the building itself since the duty of maintenance is one of a "ministerial" nature. As noted above, however, plaintiff's fourth amended complaint included no allegation that his injury was, in fact, caused by any such defect.

With regard to defendant Board, therefore, plaintiff's fourth amended complaint failed to state facts amounting to the breach of any duty not immunized by ORS 30.265. The Board's demurrer was properly sustained.

The fourth amended complaint charged defendant County with negligence in (1) leasing the arena for the powwow when it knew children would be in attendance and would be exposed to the danger of horses on the adjacent fairgrounds, (2) failing to place warning signs, post guards, place fences, rope off or otherwise separate the area of ingress and egress to the arena from places where horses were located, and (3) allowing minors, without direct supervision by adults, to be in charge of horses, allowing horses to be left unattended outside the barns while patrons of the powwow were present, and failing to direct—by rules or other means—the owners or those in charge of horses to avoid leaving them unattended.

▇▇▇▇ As noted above, when a public body is called upon in the course of its official duty to make a decision requiring the exercise of a reasoned judgment based upon policy considerations, acts or omissions resulting from that decision are "discretionary" and thus

generally protected by the doctrine of governmental immunity. Defendant County, through its Fair Board, is authorized by ORS 565.230[9] to insure full utilization of the fairgrounds by making its facilities available for a wide range of public gatherings. The County's decision to lease the arena was one involving "* * * the whole spectrum of the ingredients for governmental decisions * * *" (*Smith v. Cooper*, supra, 256 Or at 506); as such it was a decision which a judge or a jury—lacking the expertise to weigh relevant political as well as technical considerations—is not qualified to review. The decision could not, therefore, give rise to any tort liability; for this reason the demurrer to plaintiff's first charge of negligence against defendant County was properly sustained.

■ Once again, presuming that plaintiff's fourth amended complaint states his case as favorably as the

---

[9] ORS 565.230 provides:

"(1) The [fair] board has the exclusive management of the ground and all other property owned, leased, used or controlled by the county and devoted to the use of the county fair, and is entrusted and charged with the entire business management and financial and other affairs of such fair.

"(2) In order that the fairgrounds and buildings may be utilized to the fullest extent for pleasure, recreation and public benefit, the board shall at all times have the authority to provide park facilities for the public or to issue licenses and grant permits for the holding of any exhibitions, shows, carnivals, circuses, dances, entertainments or public gatherings upon the fairgrounds. During the progress of county agricultural or industrial fairs and not otherwise, any such businesses so licensed by the board shall not be required to pay license to any city or county other than to the board as provided in this section. The board shall fix the sum to be paid for such permits and licenses, which shall be issued and signed by the president and secretary of the board. The moneys received from the issuance of such permits and licenses shall be deposited to the credit of the fair fund and warrants drawn against it the same as upon the disbursement of any other fair funds."

facts will allow, one is compelled to conclude that the injury complained of occurred somewhere outside the arena—and its area of egress and ingress—to which the plaintiff and has family had been invited. Plaintiff's status at the time of the accident was, therefore, that of a trespasser rather than an invitee. Generally, one entering or remaining on premises in the possession of another without a privilege to do so may hold the possessor liable for an injury suffered while on the premises only where that injury has been inflicted "wilfully or wantonly." *Hansen v. Cohen et al,* 203 Or 157, 276 P2d 391 (1954), 278 P2d 898 (1955); *Rich v. Tite-Knot Pine Mill,* 245 Or 185, 421 P2d 370 (1966). In *Pocholec v. Giustina et al,* 224 Or 245, 355 P2d 1104 (1960), however, the Supreme Court adopted a special rule (reaffirmed as recently as April of 1974 in *Loney v. McPhillips,* 268 Or 378, 521 P2d 340 (1974)) to be applied where a trespasser is—as the plaintiff in this case—a "child."

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land—the definition of which we may assume to include the presence of an unattended horse—if the following elements are successfully established:

"'(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

"'(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

"'(c) the children because of their youth do not discover the condition or realize the risk involved in

intermeddling with it or in coming within the area made dangerous by it, and

" '(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

" '(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.' " 268 Or at 380-81.

In order to survive a demurrer for failure to state facts constituting a cause of action, a complaint must include some allegation of material fact relating to each element of the cause of action, *Eastman v. Jennings-McRae Logging Co.*, 69 Or 1, 138 P 216, 1916A Ann Cas 185 (1914); the total omission of a material and necessary allegation will render the complaint fatally defective. *Fulton Ins. v. White Motor Corp.*, 261 Or 206, 493 P2d 138 (1972).

Plaintiff here was thus obligated to plead each of the elements of a prima facie case—(a) through (e) quoted above—in order to successfully allege a cause of action.

The statement of facts found in Paragraphs III through V—e.g., defendant County owned and controlled the fairgrounds adjacent to and surrounding the arena leased to the Board which planned to use it as the site for an event to be attended by the public, including children—appears to provide the essential allegation that the defendant "* * * [knew] or [had] reason to know that children [were] likely to trespass * * *" on its grounds. That the County knew or had reason to know the horse causing the injury to plaintiff had been left unattended, creating an unreasonable risk of death or serious bodily harm, may be inferred

from the allegation incorporated into Paragraph VIII to the effect that defendant County allowed "* * * horses to be left unattended outside the barns while patrons of the powwow were present * * *." The explicit charge of negligence included in the same paragraph of the fourth amended complaint is in and of itself an allegation of failure to take reasonable care, and is also implicitly the charge that "* * * the burden of eliminating the danger [was] slight as compared with the risk to children involved * * *"; it thus provides the requisites found in (d) and (e) above. Finally, the statement of plaintiff's age in Paragraph VI may be interpreted as the allegation that he had failed to "* * * discover the condition or realize the risk involved * * *" because of his "youth."

> Plaintiff thus appears to have pleaded
>
> "* * * facts from which the law will imply a duty * * *.
>
> "* * * [T]he allegations of negligence stated in plaintiff's complaint, when considered in the light of his allegation as to the circumstances attending his injury, [*do*] disclose a breach of [that] duty * * *." *Klerk v. Tektronix, Inc.,* supra, 244 Or at 13.

Sustaining a demurrer to this complaint on the ground that it did not state a cause of action would, therefore, have been improper. The court below, however, sustained the demurrer filed by the County specifically because it regarded any acts or omissions by defendant County to be protected by the doctrine of governmental immunity. We do not agree. Maintenance of the fairgrounds by the County was clearly a ministerial rather than a discretionary duty—*Daugherty v. Highway Commission,* 270 Or 144, 526 P2d 1005 (1974); *Lanning v. State Hwy. Comm.,* supra—

and any breach of that duty would expose the County to liability for any damages caused by that breach.

Affirmed in part; reversed in part and remanded.

SCHWAB, C. J., dissenting in part.

I dissent from that portion of the majority opinion which holds that the State Board of Higher Education is immune from tort liability even if it was negligent in selecting a site for the "Indian Powwow." *Smith v. Cooper*, 256 Or 485, 475 P2d 78, 45 ALR3d 857 (1970), is the key Oregon opinion dealing with the immunity of state agencies in the exercise of discretionary as distinguished from ministerial functions. In attempting to resolve this perplexing problem, the court there stated:

> "The most decisive factor but one most difficult to articulate is that it is essential for efficient government that certain decisions of the executive or legislative branches of the government should not be reviewed by a court or jury. The reason behind such factor is that the bases for the legislative or executive decision can cover the whole spectrum of the ingredients for governmental decisions such as the availability of funds, public acceptance, order of priority, etc." 256 Or at 506.

The court conceded, however, that:

> "* * * A line differentiating ministerial functions from those which are discretionary has never been clearly drawn. This court and many others have had difficulty with this task." 256 Or at 495.

The court concluded:

> "* * * that at some point along the continuum of discretion a division must be made with liability on one side and immunity on the other and this division must necessarily be arbitrary." 256 Or at 499.

I, in turn, must concede that the facts of *Smith* itself lend support to the conclusion of the majority here that the selection of a site for an authorized function falls on the immunity side of the "continuum." Nevertheless, I find it difficult to believe that the Supreme Court intended that the selection of the site for a "powwow" was so important in terms of public policy and the use of public money as to require immunity for negligence in the selection.

For the foregoing reason I respectfully dissent.